Larry Don LOOPER, Appellee,

v.

Sandra Lynn McMANUS, formerly Looper, Appellant.

No. 50987.

Court of Appeals of Oklahoma, Division 2.

May 9, 1978.

Released for Publication by Order of Court of Appeals June 1, 1978.

Yonne P. McDaniel, Mangum, and Paul Stumbaugh, Mangum, for appellee.

Marti Hirst, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

On September 9, 1970, during an ill fated marriage begun while the parties were still teenagers, a child, Michael Paul Looper, was born. His custody was confided in the father upon dissolution of the union in October 1972. The father remarried sometime thereafter and, even though this marriage ended in divorce in May 1976, the stepmother continued to care for the child until April 19, 1977, the date of the order appealed from giving the mother custody of Michael. In changing custody the trial court granted the father and the former stepmother, and the child's paternal grandparents (who had kept the child for a time) visitation rights. It is such rights of which the appealing mother complains.

The question posed by appellant is this—did the trial court abuse his discretion in granting rights of visitation to a third party and to the paternal grandparents none of

whom applied for such rights? While appellant does not expressly say so we assume she is of the opinion he did. In her eight page argument she never once touches on the question she puts, but discusses instead the law governing the *custodial* rights of the natural parents. The subject of visitation is mentioned once, however, and that is in connection with the case of *Alexander v. Kennedy,* 190 Okl. 6, 119 P.2d 823 (1941)—an action brought by a paternal grandparent to obtain the right to visit her grandchildren after the death of their father. According to the court's *syllabus,* and the case relied upon as a foundation for the result reached, *Alexander* treated the facts as though the contest was between the grandparent and the mother for custody of the children. Perhaps there is some basis for doing so inasmuch as the trial court's order granted "temporary control" of the children to the grandparent during particular times of the month. The important thing is that the decision failed to distinguish between the custody of a child and a right to visit with him and it is therefore valueless so far as the issues raised in this case are concerned. Moreover, the result was legislatively overruled in 1975.[1]

■ We discussed such a distinction in *Spencer v. Spencer,* Okl.App., 567 P.2d 112 (1977) saying that unlike visitational privileges custodial care "embraces the sum of parental rights with respect to the rearing of a child." Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well-being by permitting partial continuation of an earlier established close relationship.

■ Usually such an affiliation is with a natural parent. But it need not be. Those involved with domestic relations problems frequently see situations where one who is not a natural parent is thrust into a parent-figure role, and through superior and faithful performance produces a

---

1. Title 10 O.S.1975 Supp. § 5 which states in relevant part that if the parents are divorced any grandparent who is the parent of the child's divorced parent "shall have reasonable rights of visitation to the child, when it is in the best interest of the child."

warm and deeply emotional attachment. In such a situation the court should be mindful of the affectionate bond and take care in case of a major custodial change to minimize the severance consequences through the rational use of reasonable visitational access. It is with some good sense that the court observed in *Carigan v. State*, Okl., 469 P.2d 656 (1970) that a parent's right to a child is not a property right in the general sense, but it is more in the nature of a trust which is subject to regulation by and control of the state.

We think the facts in this case justify the trial court's order. The grandparents, of course, not only have a blood filiation but an emotional connection with the child growing out of nurturing him during an earlier time when the mother was more concerned with her own pleasure than with the welfare of her baby. We believe the trial court correctly concluded that arranging for the child to periodically visit the grandparents contribute in a positive way to his mental health and well-being, which after all is the paramount consideration.

The same thing is also true to an even greater extent with reference to the rights granted the former stepmother. Things being as they are the two-year-old infant was fortunate indeed to have fallen into the hands of a surrogate parent who was not only capable of providing him tender loving care but was willing to nurture him through the next three or four years—critically important formative ones incidentally—while the natural mother ventured forth in search of excitement and romance. In such circumstances a close motherly relationship was bound to have been established and it would seem cruel and completely thoughtless to suddenly sever it without providing for at least a transitional period of ·occasional visitation between the little one and the only mother he has ever really known.

We therefore hold that having resolved to provide for what he perceived to be an important need of the little boy, the trial court acted wisely in granting him a right to visit his former stepmother at specified intervals.[2]

Affirmed.

NEPTUNE, P. J., and BACON, J., concur.

---

2. Another favorable incident of the order is the fact that during the second marriage the father sired a second son. Thus the right to visit the former stepmother affords Michael the opportunity to spend a little time with his half brother.