**In the Matter of the GUARDIANSHIP OF Pat SHERLE and Michael Sherle, Minor Children.**

**No. 59202.**

Court of Appeals of Oklahoma, Division 4.

May 1, 1984.

Rehearing Denied May 24, 1984.

Released for Publication by Order of the Court of Appeals June 25, 1984.

1. 74 O.S.1981 § 7.

Johnny M. Perry, Gillespie, Perry & Gentry, Hobart, for appellant Jerry Sherle.

Thomas W. Talley, Talley & Talley, Hobart, for appellees Ralph and Bonnie Hobbs.

DeMIER, Presiding Judge.

Jerry Sherle, father of minor sons Pat and Michael Sherle, appeals from trial court's September 14, 1982, order specifying Ralph R. and Bonnie Jean Hobbs' grandparent visitation rights as to their grandson, Michael. Based on our review of the record and applicable law, we find trial court's order considering the best interests of the child supported by the clear weight of the evidence and within its discretion. We affirm.

Jerry Sherle and Nancy Hobbs Sherle were divorced in 1976. The decree provided for joint custody—each parent having the two children born of the marriage, Pat and Michael, for six months of the year. Mother Nancy Sherle remarried sometime later, and Father remarried a widow with two young daughters in December 1981.

Mother and her father, Ralph R. Hobbs, appellee, filed an application for appointment of a guardian for the two boys on April 2, 1982, alleging Father was unfit. Trial court issued an ex parte temporary custody order giving custody to Mother and Ralph Hobbs. The matter was heard April 15, 1982, resulting in the judge's decision that no guardianship was necessary and that the matter be continued until July 7, 1982. Trial judge ordered all "other matters" to remain as set out in the divorce decree.

Mother died of cancer on May 27, 1982. At the July 7, 1982, hearing after Mother's death, trial court ordered Father to be guardian of the persons of Pat and Michael, Ralph Hobbs and John White to be co-guardians of the boys' estates, and that ten year old Michael return to Father's home to live. Sixteen year old Pat was allowed to choose either pair of grandparents to live with. He chose to live with appellee Ralph Hobbs and his wife. While "care and custody" of the boys was given to Father, the court granted both paternal and maternal grandparents the "right of reasonable visitation" with the children "at reasonable times."

On August 31, 1982, the Hobbs filed a motion asking the court to set specific visitation time periods for them with Michael. Trial court issued a September 14, 1982, order, filed on the 16th, granting specific visitation to the maternal grandparents and decreed the Hobbs should visit with Michael on one weekend a month, alternate holidays, and six weeks in the summer. Of these three visitation periods, only the summer period was contested during the proceedings. Holidays were not mentioned at trial, and Father agreed that one weekend a month should go to the Hobbs.

Father appeals from that order and alleges trial court abused its discretion by modifying the previous order for two reasons: (1) that no showing was made of substantially changed conditions warranting modification, and (2) that the best interests of Michael were not considered. We find no such abuse of discretion and affirm the Hobbs' specified visitation rights.

Although the grandparents titled their motion a "motion to modify," we do not consider their request as one for a new modified order, but rather a request for clarification, definition, and specification of the previously granted "reasonable visitation" at "reasonable times." The subject of the motion is found in its contents, not in its title. *See Green v. Huff*, 636 P.2d 907 (Okl.1981). For this reason, Father's first assertion of error—a motion to modify visitation requires a showing of substantially changed material conditions which grandparents failed to produce—is not at issue.

The issue before us, therefore, is whether trial court abused its discretion by ruling that the best interests of the child under the clear weight of the evidence dictated its making specific the "reasonable visitation" awarded the Hobbs in the unappealed July 7, 1982, order granting the maternal grandparents their visitation right under 10 O.S. 1981 § 5.

Title 10 O.S.1981 § 5, provides in part:
When one or both parents are deceased ... any grandparent, who is the parent of the child's deceased ... parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application....

■ Court supervision over the custody and welfare of children is equitable in nature. *Ex Parte Yahola*, 180 Okla. 637, 71 P.2d 968 (1937). The district court in the exercise of its equity powers has jurisdiction to hear and determine questions of visitation in particular. *Allison v. Bryan*, 26 Okla. 520, 109 P. 934 (1910). In a case of equitable cognizance, the court must examine the whole record and weigh the evidence. The judgment of trial court will be affirmed unless clearly against the weight of the evidence or contrary to law. *Murdock v. Loeffelholz*, 421 P.2d 236 (Okla.1966).

Testimony indicated the Hobbs and Father do not and will not communicate civilly with one another. Existing hostilities were also made apparent through Mother's attempt to have Father declared unfit in the guardianship proceeding before her death.

No evidence of Father's unfitness appears of record. Both households seem to be reasonably healthy, loving environments for the boy, and Michael apparently enjoys his stays at both locations.

■ The purpose of visitation is to contribute to a child's emotional well-being by enabling the partial continuation of an earlier established close relationship. *Looper v. McManus*, 581 P.2d 487 (Okla. App.1978). The Hobbs share a close blood bond, as well as genuine affection, with Michael. They are his deceased mother's parents, making the importance of a relationship with the Hobbs more significant now than perhaps while Mother was living. Michael's only sibling resides with the Hobbs. Extended summer visits would enable the brothers to experience a quality of time together that cannot be obtained with short weekend or holiday visits where time settling in and then preparing to leave

again often occupies much of a short visiting period.

Trial court could have easily found it is in the best interests of Michael that he be allowed significant contact with his deceased mother's family to enable a sense of continuity to alleviate what must be a vast void in the lives of both Michael and Pat and to enable the boys to share and work through their situation together. In addition, the presence of hostile attitudes suggests the boy's opportunities in the future to see his maternal grandparents might be limited or at least subject to tense negotiations in the absence of a specific visitation order.

Considering the facts and circumstances before us, we cannot say trial court's order is against the clear weight of the evidence or is an abuse of discretion as to the best interests of Michael. The order specifying the maternal grandparents' previously granted reasonable visitation rights is affirmed.

STUBBLEFIELD, J., concurs.

BRIGHTMIRE, J., dissents.

BRIGHTMIRE, Judge, dissenting.

In my opinion the moving grandparents neither alleged nor proved any permanent, substantial and material change of condition justifying a modification of the custody order entered a few weeks earlier. Such proof is an essential predicate for empowering the court to modify its previous custodial order. *Gibbons v. Gibbons,* 442 P.2d 482 (Okla.1968). Unless this rule is enforced, the parties can keep an endless stream of litigation moving. The majority, however, recognizing the substantial change barrier, storms it with the magic of semantics—by calling the modification of the first order a "clarification." To me the indulged distinction is insubstantial and not justified.

I, of course, think the grandparents should have a right to visit their grandchildren. I do not believe, however, the law should relegate the natural parents to second place in the custodial picture absent a clear showing that the parent or parents are unfit.

I would reverse and vacate the order appealed. The first order granted the grandparents a right of reasonable visitation, and it is enforceable.