### In re Cherie Anne BOMGARDNER.

### No. 61329.

Supreme Court of Oklahoma.

July 16, 1985.

Order Correcting Votes Cast

Feb. 25, 1986.

Robert G. Perrine, Messrs. Talley, Perrine & Smith, Norman, for appellants.

Warren H. Crane, Lawton, for appellee.

OPALA, Justice.

 The dispositive issue for review is whether a grandparent's claim for access and companionship of their deceased daughter's offspring, which arose *before* it became remediable under 10 O.S.1981 § 5,[1] is actionable under that section. We answer in the affirmative and hold that because the legislature intended for the 1981 amendment to apply to all grandparental claims of access and to prevent the offspring's alienation from the grandparents

---

1. See footnote 13, *infra.*

when one parent is deceased, the district court erred in denying the claim by its judgment on the father's demurrer to the petition.

The grandparents' daughter, killed by her husband, was survived by a one-year old child. After the mother's death the child's father refused to allow them access to her. The grandparents brought this suit, asserting that they had a statutory claim to the companionship of their grandchild under 10 O.S.1981 § 5. The father demurred to the petition. He asserted, and now argues here, that the grandparents' claim is governed by the provisions of 10 O.S.Supp.1978 § 5,[2] the statute in effect at the time of the mother's death. The 1978 act, the father asserts, had been interpreted in *Julien v. Gardner*[3] to grant grand-parental access *only where both of the child's parents are deceased or if they are divorced.* The trial court rendered judgment for the father on his demurrer, and the grandparents bring this appeal.

Extant case law has confined grandparental claims of access to those conferred by statute.[4] While our pronouncement in this cause is based upon general principles of statutory construction, our mission is not only to ascertain legislative intent from a series of amendments § 5 has undergone, but also to impart some degree of harmony and consistency to the manifested statutory design.[5]

**2.** See footnote 10, *infra.*

**3.** Okl., 628 P.2d 1165, 1167 [1981].

**4.** *Julien v. Gardner, supra* note 3 at 1166.

**5.** Arbitrariness is minimized and the goal of impartiality furthered by harmony and consistency which represent "positive values in a legal system". J. Sutherland, Statutes and Statutory Construction § 53.01 [Sands 4th ed. 1972].

**6.** Okla.Sess.L.1971, c. 82 § 1. The terms of 10 O.S.1971 § 5 provided in pertinent part:
"... [W]hen one or both parents are deceased, any grandparent, who is the parent of the child's deceased parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto,

**I**

## HISTORY OF 10 O.S.1971 § 5

With the 1971 amendment of § 5, grandparents were given standing to assert a claim for access to their offspring only when one or both parents is deceased.[6] A 1975 amendment extended the grandparents' claim of access if the parents of the child were divorced.[7]

This court interpreted § 5 in the *Matter of Fox*,[8] decided in 1977. There, the children were adopted by the paternal grandparents after their son, the children's natural father, had given his consent following the death of the children's mother. The maternal grandmother sought and was granted access to her grandchildren. The trial court's order was reversed because the statute did not provide for grandparental access in the case of adoption.[9]

To remove the textual impediments found to be present in *Fox*, the legislature amended § 5 in 1978 to provide for grandparental claim of access when "both parents are deceased or if they are divorced". Paragraph 3 of the 1978 version authorized grandparental access if one natural parent is deceased and the surviving natural parent remarries, with the added proviso that any subsequent adoption proceeding will not terminate the grandparental rights of the decedent's parents unless so ordered by the trial court.[10]

upon the filing of a verified application for such visitation rights ..."

**7.** Okla.Sess.L.1975, c. 185 § 1. The terms of 10 O.S.Supp.1975 provided in pertinent part:
" * * * When one or both parents are deceased or if they are divorced, any grandparent, who is the parent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child ..."

**8.** Okl., 567 P.2d 985, 987 [1977].

**9.** *Matter of Fox, supra* note 8 at 986.

**10.** Okla.Sess.L.1978, c. 71 § 1. It was provided by 10 O.S.Supp.1978 § 5 in pertinent part:
" * * * When both parents are deceased or if they are divorced, any grandparent, who is the

In 1981 this court promulgated *Julien v. Gardner*,[11] where the grandparents asserted a claim for access to their deceased daughter's offspring then in the custody of their father. The opinion held that the 1978 version of § 5 no longer sanctioned grandparental access when only one parent was deceased.[12] In the wake of *Gardner* § 5 was again amended in 1981 to provide for visitation when one or both parents is deceased.[13]

Lastly, in 1982, we held in *Matter of K.S., T.W. & G.S.*[14] that grandparents could not assert a claim for access when their child's parental rights had been terminated. In response to this pronouncement, the legislature amended § 5 in 1984 by adding paragraph C to provide for access by the grandparents whose child's parental rights had been terminated.[15]

As expressed by the First Circuit Court of Appeals, "it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before".[16] The manifest objective of the series of amendments was to make alienation from grandparents remediable in *all* the described circumstances. The primary goal of this court in construing statutory enactments is to carry into effect the intent of the legislature.[17]

## II

## REMEDIABILITY OF CONDITIONS IN EXISTENCE BEFORE A REMEDY FOR THEIR CORRECTION CAME TO BE ENACTED

Although statutes are generally presumed to operate prospectively and not retroactively,[18] this presumption does not defy rebuttal if the purpose and intention of the legislature to extend the benefit of a statute to situations then in existence are expressly declared or are necessarily implied from the language used.[19] Words alone are not the only decisive factor in resolving the issue. It is not necessary for a statute expressly to state that it is intended to remedy existing conditions if such an intention can be obtained by viewing its purpose and the method of its enactment. The presumption against retrospective application stands subordinated to the most fundamental rule of construction that mandates an interpretation which will ef-

---

parent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child ...
When one natural parent is deceased and the surviving natural parent remarries, any subsequent adoption proceedings shall not terminate any grandparental rights belonging to the parents of the deceased natural parent unless ordered by the court and after opportunity to be heard, provided the district court deems it is in the best interest of the child."

11. *Julien v. Gardner, supra* note 3.

12. *Julien v. Gardner, supra* note 3 at 1167.

13. Okla.Sess.L.1981, c. 273 § 1. It was provided by 10 O.S.1981 § 5 in pertinent part:
"* * * When one or both parents are deceased or if they are divorced, any grandparent, who is the parent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child."

14. Okl., 654 P.2d 1050, 1052 [1982].

15. Okla.Sess.L.1984, c. 82 § 1. It is provided by 10 O.S.Supp.1984 § 5(C) in pertinent part:
"C. If the parental rights of one parent have been terminated and the child is in the custody of the other natural parent, any person who is the parent of the person whose parental rights have been terminated may be given reasonable rights of visitation where the court determines that a previous grandparental relationship has existed between the grandparents and the child and the district court determines it to be in the best interest of the child ..."

16. *Johnson v. United States,* 163 Fed. 30 [1st Cir.1908].

17. *Bohn v. Divine,* Okl.App., 544 P.2d 916, 919 [1975]; *Becknell v. State Industrial Court,* Okl., 512 P.2d 1180, 1183 [1973].

18. *Wickham v. Gulf Oil Corp.,* Okl., 623 P.2d 613, 616 [1981].

19. *Wickham v. Gulf Oil Corp., supra* note 18 at 616.

fectuate the legislative design.[20] In short, where the legislature has not explicitly set forth what it intended, the presumption against retroactivity should not be followed in complete disregard of factors that may give a clue to the legislative intent. Only if we were to fail in detecting legislative intent after looking at all the available indicia, would the presumption of prospectivity operate.[21] In the presence of indicia that strongly militate in favor of the statute's application to existing conditions the father must do more than simply rely on the presumption against retroactive application.

■ According to the father, the relief affordable by § 5 must be confined to grandparental complaints which *arose after* they became remediable by that section; claims that owe their existence to an event which occurred *before* a remedy for its correction came to be enacted into law are to remain nonactionable. In essence, the father maintains that because at the time of the mother's death—the critical remedy-triggering event—the grandparents had no recognized statutory claim to access, he now has a "vested right" in the continued state of his child's alienation from its grandparents. The constitutional shield from impairment or invasion of a person's "accrued, acquired or established" interest by after-enacted legislation is extended to "a matured cause of action or some legal authority to demand redress".[22] *The father's stake in his child's state of alienation does not fall under the protected rubric.* He has no constitutionally articulable claim to the state of grandparental visitation law that may have been in force when the mother died.[23]

■ Given the history of 10 O.S.1971 § 5, we conclude that the legislative purpose and design will be accomplished if the 1981 version is applied to *situations in existence* at the time of its enactment. This view is also consistent with extant case law in which the statute has been so applied.

## III

## PRIOR APPLICATION OF THE § 5 AMENDMENTS

Extant case law has interpreted the § 5 amendments to govern grandparental quests in existence at the time of enactment. In the *Matter of K.S., T.W. & G.S.*[24] the parental rights of the mother had been terminated in 1979. There, we gauged the maternal grandparents' claim to access by the terms of 10 O.S.1981 § 5. If the 1981 version were inapplicable, our assessment would have been based on 10 O.S.Supp.

---

**20.** *Wickham v. Gulf Oil Corp., supra* note 18; *In re Marriage of Bouquet,* 16 Cal.3d 583, 128 Cal. Rptr. 427, 429, 546 P.2d 1371, 1373 [1976].

**21.** *Wickham v. Gulf Oil Corp., supra* note 18.

**22.** Art. 5 § 54, Okla. Const. Accrued right, as used in § 54, Art. 5, Okla. Const., may be defined as a matured cause of action or some legal authority to demand redress. *Mid-Continent Casualty Co. v. P & H Supply, Inc.,* Okl., 490 P.2d 1358, 1361 [1971]; *Barry v. Board of County Commissioners,* 173 Okl. 645, 49 P.2d 548, 549 [1935]. "A *'vested right'* is the power to do certain actions or possess certain things lawfully, and is substantially *a property right.* It may be created either by common law, by statute or *by contract.* Once created, it becomes absolute, and is protected from legislative invasion by Art. 5, Secs. 52 and 54 of our Constitution." [emphasis supplied]. *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* Okl., 464 P.2d 748, 755 [1969].

**23.** [a] A parent's status vis-a-vis its child is not a property right in the general sense but more in the nature of a legal condition *which is subject to contest and regulation by the state. Carignan v. State,* Okl., 469 P.2d 656, 659 [1970]. [b] In a controversy to determine the effect of legislation changing the age of majority upon the support provisions in a divorce decree entered before the effective date of the enactment, the Arizona Supreme Court held that majority or minority is but a *status—as distinguished from a vested right fixed at birth—*which the legislature has full power to reshape or change. A claim to child support was deemed to be no more a vested right than the status upoa which it depends. The legislative act—silent as to its effect on existing support orders—was held to be *neither prospective nor retrospective.* Rather, it was viewed as operating to affect *all* minors from and after its effective date. *Stanley v. Stanley,* 112 Ariz. 282, 541 P.2d 382, 383 [1975].

**24.** *Supra* note 14.

1978 § 5, the statute in force when the maternal rights came to be terminated.

In *Application of Grover*[25] maternal grandparents were denied custody of their underage offspring in a contest with the father. The mother had died in 1979. In denying custody to the grandparents, who had cared for the child over three years, we noted that our pronouncement "... should not be taken to prohibit the grandparents from proceeding to obtain reasonable rights of visitation to the child provided for in 10 O.S.1981 § 5 ..."[26] Unless the 1981 amendment were invocable by the grandparents in *Grover*, our holding in *Julien v. Gardner*[27] would have barred their claim for access to their daughter's offspring.

Lastly, in *Looper v. McManus,*[28] decided in 1978 by the Court of Appeals, the maternal grandparents' claim of access was allowed. The parents of the child had been divorced since 1972. By the terms of 10 O.S.1971 § 5, parents of divorced parents were not granted visitation privileges. The court thus applied 10 O.S.Supp.1975 § 5 to allow these grandparents' claim, although it was in existence when the statute came to be enacted.

## IV

### THE CHILD'S BEST INTEREST

The phrase "best interest of the child" is commonly used by the legislature and this court as a test for granting or withholding visitation.[29] The parental interest is subordinate to the child's best interest.[30] Grandparental visitation represents a wholesome contribution to a child's welfare. It is not granted solely for the benefit of the adult participant.[31] The grandparents here are the child's deceased mother's parents. The importance of a continued relationship with them is perhaps more significant now than while the mother was living.

■■ Court supervision over the welfare of children is equitable in character.[32] The legislature has never statutorily declared a grandparent's access to the grandchild to be nonactionable. All impediments to the cognizance of a grandparent's claim have been self-imposed. Equity recognizes—independent of statute—the grandparents' claim to the companionship of their grandchild. Quite often it is an important source of stability and calm in the child's environment.[33]

■■ We hold that the maternal grandparents do have standing—both under the statute and in equity—to assert a claim for access and companionship of their offspring.

The trial court's refusal to entertain the claim is reversed; the cause is remanded with directions to allow the grandparents to prosecute their quest for visitation. The merits of their claim are to be gauged by application of time-honored equitable considerations.

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, C.J., dissents.

SIMMS, Chief Justice, dissenting:

The right of grandparents to visit their grandchildren exists only by reason of statute. There is no equitable claim or right to such visitation, and the Court, in my view, errs in stating otherwise.

The statute which governs this right of visitation, is, and must be, that statute which is in effect at the time grandparents file their application for visitation. To hold

25. Okl., 681 P.2d 81, 83 [1984].

26. *Application of Grover, supra* note 25 at 83.

27. *Julien v. Gardner, supra* note 3.

28. Okl.App., 581 P.2d 487, 489 [1978].

29. See footnotes 6, 7, 10 and 13 *supra. Johnson v. Johnson,* Okl., 681 P.2d 78, 79–80 [1984].

30. *Johnson v. Johnson, supra* note 29 at 80.

31. *Looper v. McManus, supra* note 28 at 488.

32. *Guardianship of Sherle,* Okl.App., 683 P.2d 78, 80 [1984].

33. *Looper v. McManus, supra* note 28 at 488.

that the rights are fixed by the date parents die or become divorced would create arbitrary classes of grandparents. Also of course, the continuation of the right depends on the continuation of the statute. If the legislature repealed 10 O.S.1981, § 5, grandparents would no longer have a right to seek visitation, regardless of how the statute read at the time their child died or became divorced.