1999 OK 40

**K.R., Appellee,**

**v.**

**B.M.H., Appellee,**

**C.R. and K.R., Appellants/Intervenors.**

**No. 89,594.**

Supreme Court of Oklahoma.

May 11, 1999.

522

N. Blaine Frierson, Tulsa, Oklahoma, For Appellants.

K.R., Broken Arrow, Oklahoma, For Appellee, Pro Se.

J. Thomas Mason, Tulsa, Oklahoma, For Appellee, B.M.H.

HODGES, J.

¶ 1 The issues before this Court are whether the trial court abused its discretion in restricting the paternal grandparent's visitation and having it coincide with the father's visitation. We find that the trial court did not abuse its discretion in its award of grandparental visitation.

## I. FACTS

¶ 2 G.M. was born on February 9, 1991, to K.R. and B.M.H., the appellees. The appellees were unmarried college students at the time of G.M.'s birth. Three months after G.M.'s birth, K.R. (father) brought this action to establish his paternity. B.M.H. (mother) was given primary custody with the father given liberal visitation rights.

¶ 3 Because his parents were in school during the first three years of G.M.'s life, his paternal grandparents had primary responsibility for his care at least sixty percent of the time and possibly more based on varying testimony. During the first three years of G.M.'s life and at the time of the hearing, the grandparents' 36–year–old unmarried son, C.R. (uncle) lived with them and was one of the primary care givers for G.M. when G.M. was in the grandparents' home. As a care giver to G.M., the uncle changed G.M.'s diapers and bathed him. In addition, due to a shortage of beds in the house, G.M. sometimes slept in the same bed with his uncle.

¶ 4 When G.M. was three years old, his mother noticed that he obsessively touched his genitals and buttocks. When the mother questioned G.M., he explained that his uncle touched him in that way and that he touched his uncle's genitals. G.M.'s parents took him to a pediatrician where G.M. repeated to the doctor the allegations regarding the uncle. The pediatrician reported the incident to the Department of Human Services (DHS).

¶ 5 In April, May, and June of 1994, Beth Persac, a licensed marital and family therapist and registered play therapist, although not employed by the DHS, did a therapeutic assessment of G.M by request of the DHS. At two sessions, G.M. told Ms. Persac that his uncle had touched his "wee wee" indicating his genitals. G.M. also stated that G.M. had to touch his uncle's "wee wee". G.M.'s allegations concerning his uncle were confirmed during conversations in which he was shown anatomical drawings.

¶ 6 DHS' involvement prompted the mother to refuse to allow G.M. to visit his grandparents' house. Following the change in visitation, the grandparents intervened in this case by filing an application for grandparental visitation rights. The grandparents asked for distinct visitation rights separate from the father's.

¶ 7 In the latter part of 1995, G.M., the grandparents, and the uncle were assessed by Dr. Allan Eugene Reynolds, a clinical psychologist. Reynolds found that G.M. was obsessed with ideation, that is play with his genitals and buttocks. Reynolds stated that although there could be other causes, the primary cause of ideation is exposure to improper conduct. G.M.'s inappropriate behavior caused Dr. Reynolds' concern that abuse may have occurred.

¶ 8 According to Dr. Reynolds, G.M. stated that his uncle had never hurt him or inappropriately touched him. However, Dr. Reynolds admitted that it is not uncommon for children who have been abused to deny that any abuse occurred. There were no other indications during the sessions with Dr. Reynolds that G.M.'s accusations against his uncle were false.

¶ 9 Dr. Reynolds found that it was unlikely that the uncle had molested G.M. although he could not say for certain that the uncle had not acted inappropriately with G.M. Dr. Reynolds did not think that G.M. would be at risk if allowed to visit his uncle without supervision; however, in an effort to ease the mother's anxiety over the situation, Dr. Reynolds recommended that visits between G.M. and his uncle be supervised.

¶ 10 Dr. Reynolds noted that G.M. and the grandparents had a close relationship. He thought that it would be appropriate for

the grandparents to have unsupervised visitation with G.M.

¶ 11 Throughout G.M.'s life, his mother and father have worked together to care for G.M. Both attended sessions with the pediatrician, with Beth Persac, and with Dr. Reynolds. They have worked out any problems with visitation between themselves. The mother does not object to G.M. visiting the grandparents. She only objects to G.M. having unsupervised visits with his uncle.

## II. DECISIONS OF THE TRIAL COURT AND COURT OF CIVIL APPEALS

¶ 12 After hearing all the evidence, the trial court granted custody to the mother, with visitation to the father. The father was granted visitation with G.M. every other weekend, one evening during the off week, one week in the summer, and alternating holidays. The grandparents were granted access to G.M. as the father would allow during his visitation time. The grandparents were given the right to exercise visitation in the father's place if he is unable to exercise his visitation.

¶ 13 The trial court identified the uncle as having molested G.M. The uncle was allowed supervised visitation. The trial court ordered that the uncle could not be in the homes of either the father or the grandparents at the same time as G.M. The court also ordered the uncle not to contact G.M. except for the supervised visits.

¶ 14 The grandparents appealed. The grandparents argued that the trial court erred in finding that the uncle had molested G.M. and in denying them unqualified visitation separate from the father's.

¶ 15 The Court of Civil Appeals found that the trial court did not err in denying the grandparents visitation distinct from the father's. However, the Court of Civil Appeals found that there was no credible evidence to support a finding that the uncle had molested G.M. and reversed the trial court's restriction that the uncle have no contact with G.M.

¶ 16 The mother filed a petition for writ of certiorari. In the petition, the mother objects only to the Court of Civil Appeals removing the restriction on the grandparents' visitation prohibiting contact between the uncle and G.M. This Court granted the petition for writ of certiorari.

## III. DISCUSSION

¶ 17 This Court has held that grandparents have no constitutional right to custody of or visitation with their grandchildren. *In re Bomgardner,* 1985 OK 59, ¶ 3, 711 P.2d 92, 94; In re *Application of Grover,* 1984 OK 20, ¶ 12, 681 P.2d 81, 82. Grandparent's rights to visitation are governed by statute and equity. *In re Bomgardner,* 1985 OK 59, ¶ 3, 711 P.2d 92, 94; In re *Application of Grover,* 1984 OK 20, ¶ 12, 681 P.2d 81, 82. By analogy, aunts and uncles have no constitutional right to visitation of minor unmarried nieces and nephews. Further no such rights of aunts and uncles are provided by Oklahoma statute. The only challenge to the uncle's visitation rights preserved for this Court's review are vis-a-vis the restrictions on the grandparent's visitation. Thus, we need not address whether the trial court erred in awarding supervised visitation to the uncle.

¶ 18 The only issues before this Court concern the grandparents' visitation. Custody and visitation are matters of equity and left to the sound discretion of the trial court. *Kahre v. Kahre,* 1995 OK 133, ¶ 19, 916 P.2d 1355. "The trial court is entitled to choose which testimony to believe as the judge has the advantage over this Court in observing the behavior and demeanor of the witnesses." *Mueggenborg v. Walling,* 1992 OK 121, ¶ 7, 836 P.2d 112. The trial court's ruling will not be disturbed unless it is against the clear weight of the evidence. *Kahre,* 1995 OK 133, ¶ 19, 916 P.2d at 1360. One who alleges error in the trial court's determination on visitation must put forth the evidence upon which he relies and must affirmatively show how the determination is contrary to the best interest of the child. *See Gorham v. Gorham,* 1984 OK 90, ¶ 14, 692 P.2d 1375, 1378–79 n. 4.

¶ 19 The grandparents initially complain that part of the testimony given by the mother relating her conversation with G.M.

wherein G.M. stated that his uncle had touched his genitals was inadmissible as hearsay. The trial court determined that the statement was not hearsay and was thus admissible because it was offered not to show that the uncle fondled G.M. but to show a basis for the mother's subsequent actions. Thus, the trial court did not err in admitting the testimony. *See* Okla. Stat. tit. 12, § 2801 (1991). Additionally the record is replete with testimony regarding G.M.'s statements that his uncle improperly touched him to which there was no objection. Any objection to the admission of this testimony was waived by failure to object at the time it was offered. *Id.* at § 2104.

¶ 20 The grandparents' complaints regarding their visitation with G.M. can be divided into two facets. The first concerns the trial court's failure to establish a grandparental visitation distinct from the father's. The second concerns the trial court's order restricting G.M.'s contact with his uncle during the grandparents' visitation.

■ ¶ 21 Any rights to grandparental visitation are governed by section 5 of title 10 of the Oklahoma Statutes. Section 5 of title 10 provides: "[E]ach and every grandparent of an unmarried minor child shall have *reasonable* rights of visitation to the child *if the district court deems it to be in the best interest of the child.*" (Emphasis added.) Without a compelling interest, grandparents have no right to visitation when both parents object. *In re Herbst,* 1998 OK 100, ¶ 17, 971 P.2d 395, 399. However, in the present case, neither parent objects to G.M. visiting his grandparents or his uncle. The father does not object to unrestricted visitation, and the mother objects only to visitation which would allow the uncle unsupervised access to G.M.

¶ 22 Addressing the first issue regarding visitation, the trial court granted the father visitation every other weekend, one evening a week during the off week, and alternating holidays. Before these proceedings, the mother and father had worked together to accommodate the father's work schedule. When the father was out of town on weekends of his scheduled visitation, the parents would alter the schedule so that G.M. could visit his father on a different weekend.

¶ 23 Recognizing the significant role that the grandparents had played in the first three years of G.M.'s life, the trial court provided that the grandparents could have as much visitation with G.M. as the father deemed appropriate while he was in the father's care. The trial court also ordered that the grandparents be allowed to exercise the father's visitation if the father is unavailable due to his work schedule.

■ ¶ 24 The burden is on the grandparents to show that they have been denied reasonable visitation and that the visitation ordered by the trial court is against the best interest of G.M. There is no evidence in the record that the father will deny the grandparents access to G.M. or that the time allowed for grandparental visitation is inadequate to serve the best interest of G.M. Section 5 of title 10 requires reasonable grandparental visitation which serves the best interest of the child. Section 5 does not require a distinct grandparental right to visitation. The purpose of section 5 is to prevent alienation from grandparents. *In re Bomgardner,* 1985 OK 59, ¶ 1, 711 P.2d 92, 95. The visitation schedule serves the purposes of section 5 and accommodates the interests of the parties involved. We find no abuse of the trial court's discretion in the visitation schedule.

■ ¶ 25 The second issue regarding visitation is whether the trial court abused its discretion in restricting the grandparental visitation by limiting contact between G.M. and his uncle. The right to grandparental visitation, as with the parental right to custody, is secondary to the best interest of the child. The grandparents argue that it is inconvenient for the uncle to leave their home while they exercise visitation and that there is no credible evidence to support such a restriction.

¶ 26 The trial court found, by a preponderance of the evidence, that the uncle had molested G.M. and, therefore, that his contact with G.M. should be supervised. There is ample evidence in the record to support for this finding.

¶ 27 Beth Persac, who assessed G.M. nearest in time to the incidents, testified that G.M. told her that his uncle had touched his genitals and that G.M. had touched his uncle's genitals. After Ms. Persac showed G.M. anatomical drawings, he repeated his allegations concerning his uncle.

¶ 28 G.M.'s mother testified that G.M. had accused his uncle of fondling him. When questioned, G.M. stated that his uncle was the only one who had touched him in that manner. G.M. told his pediatrician that his uncle had fondled him. G.M.'s mother also testified that during a visitation period, after an order had issued restricting the uncle from having unsupervised contact with G.M., the father left G.M. at the grandparents' house while the uncle was present.

¶ 29 Dr. Reynolds, the grandparents' expert witness, recommended only supervised visits between G.M. and his uncle based on the mother's anxiety even though he did not believe the uncle posed a threat to G.M. He also testified that he could not conclusively state that the uncle did not molest G.M.

¶ 30 While there is conflicting testimony concerning the allegation that the uncle molested G.M., there is adequate evidence to warrant the restriction on the grandparents' visitation rights. The grandparents attempt to explain G.M.'s accusations by arguing that the uncle's contact with the genitals was necessary and incidental to his role as a care taker. However, their argument does not explain why G.M. never made such accusations concerning his other care takers, nor does it explain why G.M. would state that he had touched his uncle's genitals.

¶ 31 The grandparents also argue that they should not be responsible for insuring that the uncle has no contact with G.M. while visitation is exercised by them. This argument is without merit. When visitation is being exercised, the father and the grandparents have control over G.M. and are responsible for his care. When G.M. is in their home, the grandparents are in the best position to protect G.M. from contact with the uncle. When visitation takes place in their home, the grandparents have the burden to insure compliance with the trial court's order.

¶ 32 During the course of the proceedings, the trial court issued a temporary order restricting contact between G.M. and the uncle. The testimony was that order was violated when the uncle was allowed in the grandparents' home while G.M. was there visiting. Because of this violation of the temporary order, the restriction on the grandparents' visitation is necessary.

¶ 33 The weight of the evidence supports the trial court's decision that any contact between G.M. and his uncle should be supervised. Thus, we find no abuse of the trial court's discretion in prohibiting contact between G.M. and his uncle during periods of visitation with the father and the grandparents and in placing the burden on the parties exercising visitation to be certain that such contact does not occur. The Court of Civil Appeals, in reaching its reversal, impermissibly reweighed the evidence. *Doyle v. Kelly*, 1990 OK 119,¶ 1, 801 P.2d 717, 718 n. 1.

## IV. ATTORNEY FEES

¶ 34 The mother has requested an award of appeal-related attorney fees. Most of the authority cited in support of an award addresses only the procedures for filing a motion and is not a basis for an award. The only authority cited in the motion which stands as authority for an award of attorney fees is section 110(C) and (D) of title 43. Section 110 allows attorney fees in actions for divorce or separate maintenance. Section 110 is not authority for an award of attorney fees in actions to determine paternity. Thus, the motion for an award of appeal-related attorney fees is denied.

## V. CONCLUSION

¶ 35 The grandparents have failed to show that the trial court's order restricting their visitation with G.M. is not in the best interest of the child. Giving the proper deference to the trial court, we find no error in the trial court's refusal to establish distinct grandparental visitation separate from the father's. Likewise, we find no error in the trial court's order limiting contact between G.M. and his uncle and placing the burden on

the parties which are exercising control over G.M. to prevent such contact.

¶ 36 The judgment of the trial court is affirmed. The opinion of the Court of Civil Appeals is vacated. The mother's motion for appeal-related attorney fees is denied.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED; MOTION FOR APPEAL RELATED ATTORNEY FEE DENIED.

¶ 37 HARGRAVE, V.C.J., LAVENDER, OPALA, ALMA WILSON, KAUGER, JJ., concur.

¶ 38 SIMMS, J., concurs in judgment.

¶ 39 SUMMERS, C.J., WATT, J., concur in part; dissent in part.