2002 OK CIV APP 2

**In the Matter of the ADOPTION OF J.T., S.T., and C.T., minor children.**

**Lucille A. Poauty, Plaintiff/Appellant,**

v.

**State of Oklahoma; Dan and Raylene Deskin, Defendants/Appellees.**

**No. 95,428.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided Aug. 24, 2001.

Rehearing Denied Sept. 28, 2001.

Certiorari Denied Dec. 4, 2001.

Lucille A. Poauty, Shawnee, OK, Pro Se.

Misty Tiller, Assistant District Attorney, Shawnee, OK, For Appellee State.

Sheila G. Kirk, Chandler, OK, For Appellees Dan and Raylene Deskin.

Opinion by LARRY JOPLIN, Judge:

¶ 1 Lucille A. Poauty (Grandmother), maternal grandmother of S.T., J.T. and C.T. (Children), seeks review of the trial court's order denying her petition to vacate (and/or motion for new trial) after the trial court granted the application to adopt by Dan and Raylene Deskin (Parents). In this appeal, Grandmother *pro se* alleges non-compliance with the adoption provisions of the Oklahoma and Federal Indian Child Welfare Acts; misconduct by the Oklahoma Department of Human Services; and a failure of agreed-to visitation.[1] Having reviewed the record, however, we find no error as alleged, and hold the order of the trial court should be affirmed.

¶ 2 On October 2, 1992, Children's biological mother (Mother) left them with Grand-

---

1. Although Grandmother does not cite case or statutory law in her pro se brief, she does reference the record inasmuch as alleging failures and errors by DHS and the trial court. Accordingly, we do not dismiss her appeal out of hand; rather, we will review the referenced portions of the record to determine if Grandmother's allegations of error are meritorious.

mother for a few days but failed to return.[2] At a hearing on October 23, 1992, which Grandmother did not attend, Children were adjudicated deprived and placed in DHS custody, Grandmother having professed her inability to care for Children. DHS placed Children in the care of their paternal grandmother, but she too was unable to care for them, and in 1994 Children were again placed by DHS in foster care. In 1995, the parental rights of Children's biological parents were terminated.

¶ 3 In late 1996, Grandmother and the paternal grandmother requested home studies for the purpose of obtaining custody of Children. Grandmother later rescinded her request, and paternal grandmother "did not pass" her home study. In January 1997, DHS filed a report, in rather scathing terms, recommending against placement of Children with Grandmother. That same month, Grandmother retained counsel and entered an appearance. In June 1997, Children were placed with Parents.

¶ 4 The trial court allowed additional home studies and "re-evaluations," the results of which were not favorable to Grandmother. In November 1997, the Choctaw Nation,[3] by and through the adoptions specialist representative, recommended "non-familial adoption" as in Children's best interests, noting Children's lack of family placement since 1992 notwithstanding the "adequate time and opportunity" of "extended family" to provide care or placement of Children.

¶ 5 At about the same time, Grandmother filed her application for Children's "pre-adoptive placement" with her as consistent with the statutory preference regarding Indian children and setting forth her desire to adopt. One month later, Parents filed a motion to intervene and, subsequently, a petition to adopt Children. The trial court agreed to yet a third home study of Grandmother.

¶ 6 On November 23, 1998, the trial court held a hearing on the final decree of adoption, and Grandmother appeared with counsel. Grandmother objected to the adoption of Children, or in the alternative, sought to obtain specific visitation rights. The trial court granted Parents' petition to adopt, and transmitted to Grandmother's counsel a copy of the file along with a proposed Journal Entry. After Grandmother's counsel failed to respond for approximately six weeks,[4] the trial court approved and entered a Final Decree of Adoption in January 1999.

¶ 7 Nine months later, Grandmother filed a petition to vacate the decree of adoption or, in the alternative, a motion for new trial, alleging lack of notice and/or approval of the Final Decree and post-decree *nunc pro tunc* orders affecting Children's name change. In the meantime, the paternal grandmother challenged Grandmother's petition to vacate, arguing Parents' adoption should be approved or, in the alternative, custody should be vested in her. In January 2000, Grandmother filed a second amended motion to vacate "or in the alternative motion to enforce visitation agreement and to clarify order granting visitation to grandparents and setting forth specific visitation to grandparents," arguing the trial court should enforce "the agreement" allowing Grandmother visitation with Children not less than that provided by the standard visitation schedule in divorce cases.

¶ 8 Shortly thereafter, the Choctaw Nation filed a motion to dismiss Grandmother's petition, stating it had investigated and monitored the present case since its inception and asserted the best interests of Children would be served by Parents' continued custody with limited visitation by Grandmother and the paternal grandmother. In September 2000, the trial court denied Grandmother's post-judgment motions except as necessary to allow visitation "as the parties agree" or, absent agreement, for three hours of supervised visitation on the first Saturday of each month. Grandmother appeals.[5]

---

2. A fourth child is non-Indian and not part of this appeal.

3. Of which Children were members.

4. Grandmother's counsel subsequently notified Parents' counsel that "in the near future," he would be "in touch."

5. DHS filed a response brief moving to dismiss Grandmother's appeal for failure to join the

¶ 9 As she did below, Grandmother invokes the protections of the Federal Indian Child Welfare Act, 25 U.S.C. § 1903 et seq., and the Oklahoma Indian Child Welfare Act, 10 O.S.1991 § 40.2(2). Particularly, Grandmother argued (and argues) that as a statutorily defined "Indian custodian," she could not consent to foster care for Children, her wards, without approval of a judge of a court of competent jurisdiction who certified that the terms and consequences of the "Indian custodian's" consent were fully explained in detail and understood. While we agree the cited law indeed provides, we cannot say those provisions operate in Grandmother's favor.[6]

¶ 10 First, upon obtaining "physical custody" of Children in 1992, Grandmother almost immediately surrendered custody of Children to DHS. Grandmother did not seek to regain custody until 1995, over three years after (1) Children had been removed from their natural parents' custody, (2) the court adjudicated them deprived, (3) the court terminated the natural parents' rights, and (4) the court placed Children in Parents' care.

¶ 11 Second, the Choctaw Nation consented to placement of Children with Parents and Parents' adoption, subject to visitation by Grandmother; Parents agreed to visitation by Grandmother; and the trial court approved the agreement for visitation. Grandmother essentially consented to the adoption upon favorable visitation provisions, and the trial court entered a very specific order regarding visitation if the parties could not agree.

¶ 12 Third, Grandmother waited for nine months after entry of the final decree of adoption before challenging the decree by her petition to vacate, then seeking visitation beyond that agreed to by Parents. The Choctaw Nation opined that Children's best interests were served by limited visitation with Grandmother.

¶ 13 Grandmother was accorded years to demonstrate a desire and ability to provide a proper home for Children, which Grandmother failed to do. Grandmother acquiesced to Children's adoption while represented by counsel, notwithstanding Grandmother's protestations to the contrary in this appeal. The Choctaw Nation recommended both Parents' adoption and limited visitation by Grandmother.

¶ 14 Under these facts and the circumstances of this case, we consequently cannot say Grandmother qualifies as an "Indian custodian" having temporary custody of Children as to enjoy the statutory custodial preference. Absent evidence of Grandmother's status as an "Indian custodian" of Children so as to bring her under the purview of the state and federal Indian child welfare acts, a grandparent has no constitutional right to visitation with a grandchild. K.R. v. B.M.H., 1999 OK 40, ¶ 17, 982 P.2d 521 ("This Court has held that grandparents have no constitutional right to custody of or visitation with their grandchildren.") Grandparental visitation may be allowed only if the trial court, in the exercise of its sound discretion, determines such visitation is in the best interests of the child(ren), and the trial court's judgment will not be disturbed on appeal unless clearly against the weight of the evidence or affected by an abuse of discretion. 10 O.S. § 5; Kahre v. Kahre, 1995 OK 133, 916 P.2d 1355. Having thoroughly reviewed the record, we find the trial court's order denying Grandmother post-trial motion challenging adoption and visitation unaffected by reversible error.

¶ 15 The order of the trial court denying Grandmother's petition to vacate/motion for new trial is therefore AFFIRMED.

ADAMS, P.J., concurs in result; JONES, J., concurs.

---

proper appellees, the Deskins; however, the Deskins have entered an appearance. We accordingly deny DHS's motion to dismiss and address the matter on the merits.

6. The sections of the Federal Indian Welfare Act cited by Grandmother all refer to an Indian child's parent or Indian custodian, presupposing that only one but not both may exercise care, custody, and control of an Indian child at the same time.