Dear State Senator Gumm,
¶ 0 This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Pursuant to Okla. Const. art. V, § 58 that governs the time whenlegislative enactments take effect, may legislation that imposes amoratorium on tax credits for investments in small business and ruralsmall business become effective on a date that occurs prior to "ninetydays after adjournment of the session at which it was passed" when thereis no emergency clause in the legislation?
 2. Senate Bill 1590 provides for a moratorium on tax credits forinvestments in small business and rural small business made on orafter June 1, 2010 and through December 31, 2011. If legislationmay not become effective prior to ninety days after adjournment ofthe session at which it was passed, may the moratoriums created inSenate Bill 1590 apply to investments made for a time prior to theeffective date of the legislation?
 Introduction
¶ 1 In the past legislative session, the Oklahoma Legislature enacted Senate Bill 1590[1] that creates a moratorium to be in effect for a certain time on tax credits for small businesses and rural small businesses. At Section 1 the legislation provided:
 The Legislature hereby establishes a moratorium on tax credits authorized pursuant to Sections 2357.62 and 2357.63 of Title 68 of the Oklahoma Statutes, subject to the provisions of subsection A of Section 2357.62 and subsection A of Section 2357.63 of Title 68 of the Oklahoma Statutes. Unless otherwise repealed or revoked by the Oklahoma Legislature, the moratorium shall be in effect for investments made on or after June 1, 2010, through December 31, 2011.
Id. (emphasis added). A similar provision was added at Section 4 of the bill applicable to Sections 2357.73 and 2357.74 of Title 68. The Legislature also amended the provisions of Title 68 relating to the specific investments to which the tax incentives applied. For instance, Section 2357.62 was amended to read as follows:
 For Except as provided in Section 1 of this act, for
taxable years beginning after December 31, 1997, and before January 1, 2012, there shall be allowed a credit against the tax imposed by Section 2355 or, effective January 1, 2001, Section 2370 of this title or, effective July 1, 2001, against the tax imposed by Section 624 or 628 of Title 36 of the Oklahoma Statutes, for qualified investment in qualified small business capital companies. No amount of a qualified investment made in a qualified small business capital company which has not been invested in one or more Oklahoma small business ventures prior to the effective date of the moratorium provided for in Section 1 of this act shall be eligible for any credit otherwise authorized pursuant to this section. No qualified investment made in a qualified small business capital company or qualified investment made by a qualified small business capital company in one or more Oklahoma small business ventures during the period of the moratorium pursuant to Section 1 of this act shall be eligible for any credit otherwise authorized pursuant to this section.
Id. With the use of similar language the Legislature also amended Section 2357.63 relating to investments made in conjunction with investments made by a qualified small business capital company, Section 2357.73 relating to investments made in qualified rural small business capital companies and Section 2357.74 relating to investments made in conjunction with investments made by a qualified rural small business capital company.See 2010 Okla. Sess. Laws ch. 433, §§ 3 — 6.
¶ 2 The legislation did not contain an emergency clause. See 2010 Okla. Sess. Laws ch. 433, §§ 1 — 7. Pursuant to Okla. Const. art. V, § 58, legislation that does not contain an emergency clause is to take effect ninety days after the adjournment of the session in which it was passed. The legislation did contain a provision at Section 7 stating that the act was to become effective June 1, 2010. See id. The legislation also contained provisions as set forth above in Sections 1 and 4 that state the moratorium for certain tax credits is to extend to investments made from June 1, 2010 through December 31, 2011.
¶ 3 This legislation gives rise to your question of whether the bill may become effective prior to ninety days from adjournment of the legislative session. You also ask whether the moratoriums created by the legislation may apply to investments made from June 1, 2010 to August 27, 2010 (ninety days after legislative adjournment). The underlying question is whether the provisions of the legislation establishing a moratorium on certain tax credits may apply to events occurring prior to the effective date of the bill.
 I. Legislation That Does Not Contain an Emergency ClauseTakes Effect Ninety Days After Adjournment of the LegislativeSession
¶ 4 You ask whether legislation that does not contain an emergency clause may take effect prior to ninety days prior to adjournment of the legislative session. Okla. Const. art. V, § 58 provides, in part:
 No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless, in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each House, so directs.
Id. The Oklahoma Supreme Court has interpreted this provision to mean just what it says — that legislation that does not contain an emergency clause takes effect ninety days after the adjournment of the legislative session at which it was passed. See Poafpybitty v. Skelly Oil Co.,394 P.2d 515, 517 (Okla. 1964) (stating an act passed without an emergency clause becomes law ninety days after adjournment of the Legislature); Cities Service Oil Co. v. Okla. Tax Comm'n, 129 P.2d 597,598-99 (Okla. 1942) (noting that statutes without an emergency clause do not take effect until ninety days after the adjournment of the Legislature, but the Legislature may suspend their operation beyond ninety days).
¶ 5 In Oklahoma City v. Taylor, 470 P.2d 325, 328 (Okla. 1970), an accident occurring on July 14, 1965, formed the basis for a claim arising under the Governmental Tort Liability Act ("Act"). The Act was approved by the Governor on June 28, 1965 and contained an effective date clause of July 1, 1965. The Act did not contain an emergency clause. The court found that as the Legislature adjourned on July 22, 1965, the effective date of the Act was October 21, 1965. The court stated:
 Since the "Governmental Tort Liability Act" did not contain an emergency clause, the effective date of such enactment was October 21, 1965, and not on July 1, 1965, as provided in the enactment.
Id. at 329.
¶ 6 There is no question that the legislation does not relate to the initiative and referendum and is not a general appropriation bill. Also, the legislation clearly does not contain an emergency clause. Therefore, regardless of the effective date expressed in the statute, the legislation takes effect ninety days after adjournment of the session which in this case is August 27, 2010.
 II. The Legislature Made Clear in Senate Bill 1590 That a Moratorium on Tax Credits Applies to Certain Investments Made on or after June 1, 2010 Through December 31, 2011, Dates That are Prior to the Effective Date of the Bill.
¶ 7 In addition to providing for an effective date of June 1, 2010, the Legislature also added this language in Sections 1 and 4 of the legislation, which establish new law:
 Unless otherwise repealed or revoked by the Oklahoma Legislature, the moratorium shall be in effect for investments made on or after June 1, 2010, through December 31, 2011.
2010 Okla. Sess. Laws ch. 433, §§ 1, 4 (codified as amended at 68 O.S. 2010, §§ 2357.61a[68-2357.61a], 2357.72a).
¶ 8 The question then, is whether the Legislature intended the legislation to apply to events occurring prior to the effective date of the legislation. In the strictest sense, applying a statute to events occurring prior to the effective date is not necessarily a retroactive application. Here, the Legislature merely defined the class of investments to which the moratorium applied. However, as the Legislature's action may be characterized as retroactive application we will address it based upon a retroactivity analysis.
¶ 9 Generally, there is a presumption against retroactive application of statutes. See Autry v. Multiple Injury Trust Fund, 38 P.3d 213, 218
(Okla. 2001); World Publ'g Co. v. White, 32 P.3d 835, 844 (Okla. 2001). However, statutes may be applied retroactively when the Legislature expressly declares such in the legislation or where retroactive effect can be necessarily implied from the language used. Autry, 38 P.3d at 218.
¶ 10 The primary goal in construing legislative enactments is to ascertain the intent of the legislature. In In re Bomgardner, 711 P.2d 92,95 (Okla. 1985), the Oklahoma Supreme Court stated:
 Although statutes are generally presumed to operate prospectively and not retroactively, this presumption does not defy rebuttal if the purpose and intention of the legislature to extend the benefit of a statute to situations then in existence are expressly declared or are necessarily implied from the language used.
Id. (footnote omitted). Bomgardner went further to state:
 The presumption against retrospective application stands subordinate to the most fundamental rule of construction that mandates an interpretation which will effectuate the legislative design. In short, where the legislature has not explicitly set forth what it intended, the presumption against retroactivity should not be followed in complete disregard of factors that may give a clue to the legislative intent. Only if we were to fail in detecting legislative intent after looking at all the available indicia, would the presumption of prospectivity operate.
Id. at 95-96 (emphasis added) (footnote omitted).
¶ 11 Courts have recognized situations where language in legislative enactments has been given what seems to be retroactive effect. In Mackiev. State ex rel. Department of Public Safety, 787 P.2d 874 (Okla. Civ. App. 1989), the Oklahoma Court of Civil Appeals considered a statute dealing with revocation of driving privileges. Prior to November 1, 1988, the applicable statute permitted modification of the revocation period mandated by statute upon a showing of hardship. Id. at 875. The statute was amended in November 1, 1988, to provide that revocation could be modified due to hardship subject to the limitations of 47 O.S.Supp. 1988, § 6-205.1[47-6-205.1]. Id. at 876. The clear language of Section 6-205.1 called for a review of a driver's record for the five-year period previous to the current charge to determine the appropriate period of revocation. Id. The court stated:
 [T]his consideration of a driver's previous record does not, in our view, constitute "retroactive application" of § 6-205.1. To deny § 6-205.1 this effect as argued by Appellant would, in our opinion, fly directly in the face of the statutory language to the contrary. In that regard, we believe the legislative intent of 47 O.S.Supp. 1988 § 6-205.1[ 47-6-205.1] is clear and mandates what Appellant would term "retrospective application" of that section.
Id. at 876.
¶ 12 A similar finding was made in State v. Giannetti, 996 P.2d 494
(Okla. Civ. App. 1999), where the defendant argued 10 O.S.Supp. 1998, § 7006-1.1[10-7006-1.1](A)(15) was impermissibly applied retroactively to him. Section 7006-1.1 provides a ground for termination of parental rights when a child has been in foster care for fifteen of the last twenty-two months. Id. at 495-96. The court stated:
 It is clear that the legislation, 10 O.S.Supp. 1998, § 7006-1.6[10-7006-1.6], envisioned retroactive application, thus creating an exception to the presumption that legislature [sic] which impairs a substantive right operates prospectively only.
Id. at 496. The statutes at issue in these cases did not contain specific statements of retroactivity, but legislative intent was clear that the statutes applied to events occurring prior to enactment.
¶ 13 Here, the legislative intent is clear that the moratorium is to be in effect for investments made on or after June 1, 2010, through December 31, 2011. This clear legislative intent does not arise from Section 7 stating the effective date as June 1, 2010, but arises from Sections 1 and 4 of the bill that provide specific dates for the moratorium to be in effect and from Sections 2, 3, 5 and 6 that specifically refer to the period of time set forth in Sections 1 and 4 in applying them to certain tax incentives.[2] Any presumption against retroactivity has been rebutted by the clear language in these sections necessarily implying that the moratorium is applicable to specific time periods. As legislative intent is clear, we conclude the legislation operates to include in the moratorium those investments set forth in the legislation.[3]
 III. The Oklahoma Tax Commission has the Responsibility of Enforcing the Tax Code, and it has the Responsibility to Determine Whether Certain Investments Were Made on or after June 1, 2010, Through December 31, 2011, Such That They Do Not Qualify for Tax Credits.
¶ 14 Senate Bill 1590 relates to income tax credits and amends certain provisions of the Oklahoma Tax Code. Pursuant to 68 O.S. 2001, § 203[68-203], the Oklahoma Tax Commission administers the Oklahoma Tax Code. That provision states:
 The Oklahoma Tax Commission is hereby authorized to enforce the provisions of Section 201 et seq. of this title and to promulgate and enforce any reasonable rules with respect thereto. The Tax Commission may also prescribe, promulgate and enforce all necessary rules for the purpose of making and filing of all reports required under any state tax law, and such rules as may be necessary to ascertain and compute the tax payable by any taxpayer subject to taxation under any state tax law; and may, at all times, exercise such authority as may be necessary to administer and enforce each and every provision of any state tax law.
Id. It is, therefore, ultimately the task of the Oklahoma Tax Commission to determine whether certain investments qualify for tax credits. The language of the moratorium states that it shall be in effect for "investments made on or after June 1, 2010, through December 31, 2011." Based on the specific facts of each investment the Tax Commission is the proper authority to determine whether the investments were actually made on or after June 1, 2010.
¶ 15 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Senate Bill 1590[4] does not contain an emergency clause and pursuant to Okla. Const. art. V, § 58, its provisions take effect ninety days after adjournment of the legislative session, which in this case would be August 27, 2010.
 2. The Legislature specifically provided in Senate Bill 1590 that the moratorium on tax credits is in effect for certain investments made on or after June 1, 2010, through December 31, 2011. See 2010 Okla. Sess. Laws ch. 433, §§ 1, 4 (codified as amended at 68 O.S. 2010, §§ 2357.61a[68-2357.61a]; 2357.72a). This clear expression of legislative intent rebuts the presumption of non-retroactivity, and the legislation operates to apply the moratorium to those investments. See In Re Bomgardner, 711 P.2d 92, 95-96 (Okla. 1985).
 3. The Oklahoma Tax Commission has the responsibility of enforcing the Oklahoma Tax Code, and it has the responsibility to determine whether certain investments were made on or after June 1, 2010 through December 31, 2011, such that they fall within the moratorium on tax credits. 68 O.S. 2001, § 203[68-203]. 
W.A. DREW EDMONDSON Oklahoma Attorney General
SANDRA D. RINEHART Senior Assistant Attorney General
[1] See 2010 Okla. Sess. Laws ch. 433, §§ 1 — 6 (codified as amended at 68 O.S. 2010, §§ 2357.61a[68-2357.61a] — 2357.74).
[2] See 2010 Okla. Sess. Laws ch. 433, §§ 1 — 6 (codified as amended at 68 O.S. 2010, §§ 2357.61a[68-2357.61a] — 2357.74).
[3] The legal analysis supplied by Representative Moore addresses the effect of the effective date stated in Section 7 of the bill, but does not specifically address the effect of the clear language in the bill establishing definite dates for the moratorium to be in effect. See
letter from Lewis Moore, State Representative of Oklahoma, to W.A. Drew Edmondson, Attorney General of Oklahoma (June 24, 2010) (on file with author).
[4] See 2010 Okla. Sess. Laws ch. 433. *Page 1