2001 OK 39

S.W., D.W. and D.W. Petitioners,

v.

The Honorable Jacqueline DUNCAN, Judge of the District Court of Custer County, Respondent,

and

S.R.G. and T.G., Real Parties In Interest.

No. 94,358.

Supreme Court of Oklahoma.

May 8, 2001.

848

M. Eileen Echols, C. Thomas Kite, David W. Echols and Associates, Oklahoma City, OK, for Petitioners.

Douglas Loudenback, Loudenback Associates, Oklahoma City, OK, for Real Parties in Interest.

SUMMERS, J.

¶ 1 Here we have a child custody dispute between a divorced father and the family of the divorced, but now deceased mother. The primary questions are whether the state which granted the divorce, Oklahoma, retains child custody jurisdiction after the death of the custodial parent, and whether the Oklahoma modification proceeding properly continued to exercise jurisdiction although a simultaneous Kansas modification proceeding had been commenced before the Oklahoma one. We conclude that the Oklahoma court making the initial custody determination in a divorce proceeding retains jurisdiction to modify custody after the death of the custodial parent, and that the Oklahoma modification proceeding was proper.

¶ 2 The facts are that the mother (V.W.) and father (S.W.) resided in Custer County, Oklahoma. On October 21, 1999 the decree of divorce gave custody of the little girl, J.P.W., to Mother. Father was awarded "restricted visitation," specifically "[s]aid restricted visitation shall be a maximum of three afternoon visitations per week, each being a maximum of 3 hours in length...." On January 11, 2000, Mother died as a result of a car accident.

¶ 3 On January 23, 2000, the child was in Weatherford, Custer County, Oklahoma, and being cared for by G.G., the maternal grandmother, and S.G. and T.G., the maternal uncle and aunt. The maternal grandmother resides in Weatherford. On that day, the maternal aunt took the child to her father's home in Weatherford for visitation pursuant to the divorce decree. When she returned at 6:00 p.m. she found the home locked and Father's note taped to the door. The note stated in its entirety: "I'm exercising my right to custody and moving J ... to Norton to live with [paternal uncle and aunt D.W. and D.W.] Will call when I get to Norton. [S. W.]" At approximately 6:45 p.m. she was informed by telephone that the child was in Norton, Kansas.

¶ 4 Father's brother and sister-in-law, D.W. and D. W., reside in Norton, Kansas, and they had arranged for a private plane to fly Father and child to Norton on January 23rd during the scheduled visitation. The next day, January 24th, in the District Court of Norton, Kansas, Father petitioned to have the paternal uncle and aunt named "guardians and conservators" of the minor child. On that day the Kansas court determined that: 1. the child was 5 years old, 2. she was present in Norton Kansas, 3. the child was in need of the appointment of a guardian, and 4. the petitioner was the surviving natural parent of the child and, as a surviving parent he had named the paternal uncle and aunt to be guardians. The Kansas court named the paternal aunt and uncle as guardians. Father returned to his residence in Weatherford some time later.

¶ 5 Two days later, on January 26th, the maternal uncle and aunt, S.G. and T. G., filed in the District Court of Custer County a petition for custody and guardianship of the child. Attached to the petition was the Last Will and Testament of Mother wherein the maternal uncle and aunt were designated as both guardians of the person of her child and trustees of the estate left to the child. Probate was commenced in a separate proceeding. The maternal uncle and aunt had not received notice of the proceeding in Kansas.

¶ 6 Upon presentation of the application for an emergency ex parte order the Oklahoma District Court heard testimony from the maternal aunt. She testified as to finding the Father's note, where the Father re-

sided, and why, in her view, Father's visitations with the child were restricted by the divorce decree. She testified that the maternal grandmother had been a primary care giver for the child when Mother was working. She stated that J.P.W. was in Kansas with the paternal relatives, that the Kansas relatives had seen J.P.W. approximately once per year, and that she and her husband had more contact with the child and the deceased mother. She also testified that the child was five years old and attended kindergarten in Weatherford,

¶ 7 The Oklahoma court made findings that: 1. The child had been removed from the State by a non-custodial party; 2. Harm could result to the child unless custody was awarded to the maternal grandmother (G.G.); 3. The best interests of the child required giving the maternal grandmother temporary custody; 4. Oklahoma was the home state of the child; and 5. The District Court had jurisdiction "over this situation". The court ordered that the child should not be removed from Oklahoma until the child's best interests could be determined. The court . appointed independent counsel for the child.

¶ 8 After the hearing was held and order issued on January 26th, the District Court judge learned of the Kansas proceeding. The Oklahoma judge arranged a telephone conference with the Kansas judge on January 31st. The transcript of that conference reveals that the Kansas judge stated that she did not know certain facts of the child's family as related by the Oklahoma judge. The Kansas judge declined at that time to give an opinion as to which court should proceed, or what would occur in the Kansas proceeding.

¶ 9 The Oklahoma court then held its scheduled hearing on the application for temporary custody/guardianship on February 3rd. Father and Kansas relatives were notified of the proceeding but declined to personally appear or bring the child to the court. They made a special appearance through counsel, and moved to dismiss the Oklahoma proceeding because of the pending Kansas proceeding. The Oklahoma court overruled

the motion to dismiss, determined that Father and Kansas relatives were "served", found that Oklahoma was still the home state of the child, ordered the physical custody of the child to be placed with the maternal grandmother "until further order of the Court", appointed maternal grandmother, maternal uncle, and maternal aunt as co-guardians, and ordered the Kansas relatives to immediately return the child to the grandmother. The court further found that Father was "not a fit and proper person to have custody or control of the minor child,...." The court further ordered future visitation with Father to be supervised. Father and the paternal uncle and aunt filed a petition in error herein attempting to appeal from that order.

¶ 10 The first issue we must examine is whether the order of the District Court is immediately appealable to this Court. The District Court's jurisdiction was invoked to modify the custody/guardianship of the child. The judge construed the application as requesting a modification of the divorce decree. The District Court proceeded on an application for *temporary* custody. The notice of the hearing stated that it was for the purpose of hearing the application requesting "temporary Custody/Guardianship" of the child. The District Court did not make a *final* adjudication on the application for custody/guardianship. The order awarding custody was temporary in that it serves to name custodians of the child pending the final adjudication of the application to modify custody.

¶ 11 Generally, temporary orders are interlocutory orders and not immediately appealable, unless made so by statute. *Renbarger v. Renbarger*, 1994 OK 140, 889 P.2d 1250, 1251; *Kantor v. Kantor*, 1994 OK 132, 886 P.2d 480; *Elliott v. Elliott*, 1954 OK 356, 279 P.2d 328. No statute creating such appellate jurisdiction is cited by the parties. Interlocutory orders may be reviewed on appeal from the judgment or final order in the case, *LCR, Inc. v. Linwood Properties*, 1996 OK 73, n. 19, 918 P.2d 1388, 1393, and temporary custody orders are no exception to this rule.[1] We conclude that no appellate juris-

---

1. We need not discuss either temporary orders

that are adjustments of rights in effect pending

diction has been invoked by the petition in error.[2]

¶ 12 This Court has, in limited circumstances, recast a petition in error to an application to assume original jurisdiction and request for extraordinary relief. *F.D.I.C. v. Tidwell*, 1991 OK 119, 820 P.2d 1338, 1342; *In the Matter of B.C.*, 1988 OK 4, 749 P.2d 542, 544. It is well known that temporary custody orders occur with great frequency, that they may be modified during a divorce proceeding, and that the final adjudication of custody may, or may not, be awarded to the party exercising temporary custody.[3] The primary function of this Court is appellate review, *Keating v. Johnson*, 1996 OK 61, 918 P.2d 51, 56, and this Court's original jurisdiction cannot serve as a vehicle to review the multitude of temporary custody orders issued in this State. Our assumption of jurisdiction today is *not* based upon the fact that a temporary custody order was made.

¶ 13 When deciding to recast a proceeding we have considered whether the issue before us is one of first impression. *Ellison v. Ellison*, 1996 OK 64, 919 P.2d 1, 2. The first impression issue presented is whether our prior opinions have been modified by the Uniform Child Custody Jurisdiction and Enforcement Act (U.C.C.J.E.A.), 43 O.S.Supp. 1998 §§ 551–101 to 551–402, inclusive. When deciding to recast we have also considered whether the content of the petition, i.e., the issue presented, is one that has been historically recognized by this Court as prop-

er for extraordinary relief. *In the Matter of B.C., supra.* One party to this dispute challenges the jurisdiction and authority of an Oklahoma court to hear a child custody dispute because of a pending child custody proceeding in a different state involving the same child. This Court has assumed original jurisdiction in circumstances where child custody proceedings were pending in two states. *Holt v. Dist. Court for the Twentieth Judicial Dist.*, 1981 OK 39, 626 P.2d 1336. We also recognize that prohibition is a proper remedy to prevent an inferior court from proceeding in a cause without authority or in excess of its jurisdiction. *Dowell v. Powers*, 1960 OK 246, 357 P.2d 954. We thus recast the petition in error as an application to assume original jurisdiction and petition to issue a writ of prohibition. We assume original jurisdiction pursuant to Article 7 § 4 of the Oklahoma Constitution on Petitioners' challenges to the District Court's authority and jurisdiction, but decline to issue the writ for the reasons we now explain.

¶ 14 First, we need not address the preclusive effect, if any, of the proceedings in the Kansas court; there is no "full faith and credit" argument before us.[4] Instead we focus upon the Oklahoma proceeding, the status of Father after the death of Mother, the nature of the Kansas proceeding, the Uniform Child Custody Jurisdiction and Enforcement Act (U.C.C.J.E.A.), 43 O.S.Supp. 1998 §§ 551–101 to 551–402, inclusive, and other relevant statutes.

---

the outcome of an appeal, or the procedure for appellate review of those temporary adjustments. *See Tate v. Tate*, 1996 OK 17, 912 P.2d 320, 321; Okla.Sup.Ct.R. 1.37(a) & (b). Review of this temporary order is not related to a pending appeal.

2. We note that the Uniform Child Custody Jurisdiction and Enforcement Act (U.C.C.J.E.A.), 43 O.S.Supp.1998 §§ 551–101 to 551–402, inclusive, provides for appeals from a "final order" issued in a proceeding pursuant to certain provisions of that Act not applicable here. 43 O.S.Supp.1998 § 551–314.

3. A District Court's temporary order in a divorce proceeding is not entitled to res judicata effect when that court makes its final adjudication of the matters in the divorce. *Johnson v. Johnson*, 1983 OK 117, n. 7, 674 P.2d 539, 543. *See LCR*,

*Inc. v. Linwood Properties*, 1996 OK 73, n. 14, 918 P.2d 1388, 1392, (intermediate orders are non-final and not binding on trial court in pronouncing subsequent judgment).

4. The United States Constitution requires that full faith and credit be accorded a final judgment of a sister state court having jurisdiction of the parties and of the issues. *Smith v. Shelter Mut. Ins. Co.*, 1994 OK 5, ¶ 8, 867 P.2d 1260, 1265. Petitioners have not raised this issue and we thus need not examine it in this case. The parties have not sought in this proceeding to enforce any specific child custody order issued by a court in a different state. Prior to the U.C.C.J.E.A. this Court assumed original jurisdiction and issued prohibition to prevent relitigation in this state of a previous custody adjudication in a sister state. *Grubbs v. Hunter*, 1977 OK 222, 573 P.2d 699, 702–703.

¶ 15 The maternal uncle and aunt came to court invoking the Oklahoma Guardianship and Conservatorship Act, 30 O.S.1991 § 1–101– § 4–903, Oklahoma's Uniform Child Custody Jurisdiction and Enforcement Act, 43 O.S.Supp.1998 §§ 551–101 to 551–402, and 10 O.S.1991 § 9.[5] The Oklahoma Guardianship and Conservatorship Act provides that "A guardian of the person or estate, or of both, of a child born, or likely to be born, may be nominated by will or by other written instrument, to take effect upon the death of the parent so nominating:" 30 O.S.1991 § 2–102(A). Mother's will nominates the maternal uncle and aunt as guardians of the child, and contains an express authorization for the guardians to spend whatever funds are necessary to prevent Father from obtaining custody of the child.

¶ 16 This Court has recognized a non-custodial father's "preferential right" to be appointed guardian of his children upon the death of the custodial parent. *Buxton v. Wilson*, 1982 OK 138, ¶¶ 10–11, 654 P.2d 1048, 1049. *Buxton* is consistent with the result in *Hood v. Adams*, 1964 OK 217, 396 P.2d 483, where we affirmed an order appointing a non-custodial father as guardian after the death of the custodial parent. *Buxton's* result was based upon a statutory preference for parents being appointed guardians of their children. *Buxton* relied upon 58 O.S.1971 § 569, and that statute is now codified, as amended, at 30 O.S.1991 § 2–106.[6] *Hood* was based upon the statutory preference for appointing parents as guardians in 30 O.S.1961 §§ 11–12,[7] and a father's statuto-

ry right to the custody, goods, and services of his minor child pursuant to 10 O.S.1961 § 5. In *Hood* the father was made the guardian. In *Buxton* the father was appointed guardian of the persons of the children and of their estates.

■ ¶ 17 Father claims that upon the death of a custodial parent the non-custodial parent is immediately vested with legal custody of their children. He relies upon *Turley v. Turley*, 1981 OK 161, 638 P.2d 469, where we said the following:

In *Ingles v. Hodges*, Okl., 562 P.2d 845 (1977), this Court held:

"Upon the death of the parent into whose custody children are placed by a decree of divorce, the children stand, with relation to the surviving parent and all the world, as if no decree of divorce had been entered."

The rationale behind this rule is that when a divorce decree gives custody of children to one parent, as opposed to the other, it is effective only as between the parties to the divorce, and upon the death of one, the right of custody inures automatically to the surviving parent. This position states the majority view and we know of no reason to recede therefrom.

*Turley*, 1981 OK 161, at ¶ 4, 638 P.2d at 470–471, (note omitted).

In our case today, Father had not been judicially determined to be unfit for custody prior to the death of Mother, and his parental rights had not been terminated. We thus agree that Father obtained custody rights of

---

**5.** 10 O.S.1991 § 9:

Abuse of parental authority—Civil action

The abuse of parental authority is the subject of judicial cognizance in a civil action in the district court brought by the child or any grandparent on the child's behalf, or by its relatives within the third degree of consanguinity or affinity, or by the officers of the poor where the child resides or by any foster parent of the child or any person who has been a foster parent of the child; and when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced.

**6.** 30 O.S.1991 § 2–106:

Appointment of parents as guardians.

A minor's parent who is competent to transact his or her own business and not otherwise unsui-

table or disqualified by law to serve as the guardian of said minor, shall be entitled to the guardianship of the minor until the minor has attained the age of fourteen (14) years. The parent petitioning the court for appointment as guardian of the minor must have the endorsement or nomination of the other parent, if the natural parents of the minor are married and living together. In cases where both parents are separately seeking appointment as guardian of the minor, the court may, upon full investigation, appoint the parent who in the judgment of the court is the most competent to look after the interest of said minor.

**7.** 30 O.S.1961 §§ 11–12 were repealed by Laws 1983, c. 269, § 4, eff. July 1, 1983, and by § 2 of that act similar statutory preferences for guardians was codified at 10 O.S.Supp.1983 § 21.1.

his child upon the death of the custodial parent. *Turley v. Turley, supra.* However, because of a recent statutory enactment the Oklahoma District Court of Custer County was not divested of custody jurisdiction over this child upon the death of the mother.

¶ 18 In 1980 the Legislature enacted 10 O.S.Supp.1980 §§ 1601–1627, the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), and as both originally enacted and later amended, it contained **no** provision specifying the duration of a district court's jurisdiction in a particular custody matter. In 1998 the U.C.C.J.A. was repealed and the new Uniform Child Custody Jurisdiction and Enforcement Act (U.C.C.J.E.A.), 43 O.S.Supp. 1998 §§ 551–101 to 551–402, inclusive, was enacted.[8]

¶ 19 The U.C.C.J.E.A., or "the Act" applies to a child custody proceeding. This is defined by the Act.

4. "Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under Article 3 of this act;

43 O.S.Supp.1998 § 551–102(4).

█ Guardianships and divorces are child custody matters within the scope of the Act, and exceptions to applying the Act are not applicable here.[9]

¶ 20 The Act states that custody orders are governed by the law in effect at the time the request for relief was made.

A motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before the effective date of this act is governed by the law in effect at the time the motion or other request was made.

43 O.S.Supp.1998 § 551–402.

The relief in the Oklahoma custody/guardianship matter was requested after the effective date of the Act. Thus, the guardianship is subject to the Act. The custody jurisdiction in the divorce proceeding predates the Kansas proceedings and is an exercise of *initial* child custody jurisdiction. The subsequent Oklahoma proceeding was a *modification* proceeding simultaneous with a Kansas *modification* proceeding. The Kansas modification proceeding was commenced prior to the Oklahoma modification proceeding, but the Kansas court did not have jurisdiction in substantial compliance with the U.C.C.J.E.A., and the Oklahoma modification proceeding was thus proper.

¶ 21 We have recognized that a court exercising jurisdiction in a divorce proceeding is possessed with a continuing jurisdiction over child custody matters. *Bailey v. Bailey*, 1994 OK 6, ¶ 3, 867 P.2d 1267, 1269. In the context of the death of a parent we have explained that the custodial rights of the surviving parent exist as if no divorce had occurred. *Turley v. Turley, supra.* The Legislature enacted a statute for how custody should be determined upon the death of a parent, but did not, at that time, expressly provide for the divorce jurisdiction of a district court to continue after the death of one of the parties. Title 10 O.S. § 21.1 provides that upon the death of the custodial parent a court may decline to award custody to the non-custodial parent because of that parent's failure to support the child, abandonment, or because custody by the surviving parent would harm the child.[10] But § 21.1 does not

---

8. 10 O.S.Supp.1980 §§ 1601–1627, subsequently codified at 43 O.S.Supp.1990 §§ 501–527, and repealed by Laws 1998, c. 407, § 43, eff. Nov. 1, 1998.

9. In addition to the exceptions stated in § 551–102(4), the U.C.C.J.E.A. "does not apply to an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child." 43 O.S.Supp.1998 § 551–103. *See*

*White v. Adoption of Baby Boy D.*, 2000 OK 44, ¶ 38, 10 P.3d 212, 220.

10. 10 O.S.Supp.1997 § 21.1:
A. Custody should be awarded or a guardian appointed in the following order of preference according to the best interests of the child to:
1. A parent or to both parents jointly except as otherwise provided in subsection B of this section;

expressly state that the jurisdiction of the divorce court continues after the death of the custodial parent for the purpose of custody determinations. This view was observed by one commentator on § 21.1. Spector, *A Primer On Third Party Custody In Oklahoma: The Interrelationship Between Divorce, Habeas Corpus, Guardianship and The Juvenile Code*, 61 O.B.J. 2465, 2470 (Sept. 29, 1990). However, when the Legislature enacted the U.C.C.J.E.A., it did provide for the continuing jurisdiction of a court issuing a child custody order.

¶ 22 The U.C.C.J.E.A. states:

EXCLUSIVE, CONTINUING JURISDICTION

A. Except as otherwise provided in Section 16 of this act, **a court of this state which has made a child custody determination consistent with Section 13 or 15 of this act has exclusive, continuing jurisdiction over the determination until:**

1. A court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

2. A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

B. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 13 of this act.

43 O.S.Supp.1998 § 551–202, (emphasis added).

2. A grandparent;

3. A person who was indicated by the wishes of a deceased parent;

4. A relative of either parent;

5. The person in whose home the child has been living in a wholesome and stable environment; or

6. Any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.

B. When a parent having physical custody and providing support to a child becomes deceased, in awarding custody or appointing as guardian of the child the noncustodial parent, the court may deny the custody or guardianship only if:

1. The noncustodial parent has willfully failed, refused, or neglected to contribute to the support of the child for a period of at least twelve (12) months immediately preceding the determination of custody or guardianship action:

a. in substantial compliance with a support provision contained in a decree of divorce, or a decree of separate maintenance or an order adjudicating responsibility to support in a reciprocal enforcement of support proceeding, paternity action, juvenile proceeding, guardianship proceeding, or orders of modification to such decree, or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support, or

b. according to such parent's financial ability to contribute to such child's support if no provision for support is provided in a decree of divorce or an order of modification subsequent thereto;

2. The noncustodial parent has abandoned the child; or

3. The court finds it would be detrimental to the health or safety of the child for the noncustodial parent to have custody or be appointed guardian.

C. The court may consider the preference of the child in awarding custody of said child if the child is of sufficient age to form an intelligent preference.

D. In every case involving the custody of, guardianship of or visitation with a child, the court shall consider evidence of ongoing domestic abuse which is properly brought before it. If the occurrence of ongoing domestic abuse is established by clear and convincing evidence, there shall be a rebuttable presumption that it is not in the best interests of the child to have custody, guardianship or unsupervised visitation granted to the abusive person.

E. In every case involving the custody of, guardianship of or visitation with a child, the court shall determine whether any individual seeking custody of, guardianship of or visitation with a child is or has previously been subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state. There shall be a rebuttable presumption that it is not in the best interests of the child to have custody, guardianship or unsupervised visitation granted to a person subject to or previously subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state.

Thus section 551–202 provides for **exclusive and continuing** jurisdiction of a divorce court in custody matters until certain events occur as specified in that section.[11] Of course, an initial custody determination may be modified as specified in the U.C.C.J.E.A.[12] But the death of one of the parties to a divorce is not one of the events specified in § 551–202 that would remove the continuing jurisdiction of the divorce court, or confer modification jurisdiction on a different court.

¶ 23 Assuming, but without deciding, that § 551–402 is applicable for determining the scope of § 551–202, we look at the date the request for custodial relief was made. The dates the divorce proceeding and custody motions therein were filed are not part of the record before us. However, the transcript of the telephonic proceedings involving the Kansas and Oklahoma judges shows a statement by the Oklahoma judge that in October 1999 the divorce had been pending less than one year, and that in December 1998 some temporary custody orders were issued by agreement of the parties. Later in the conversation the Oklahoma judge states that she had been "exercising continuing jurisdiction over this child since at least December 1998."

The Oklahoma trial judge concluded that the Act applied, and according to Petitioners, the trial judge "treated the guardianship as if it were a modification of the Decree of Divorce." We conclude that § 551–202 applied to the divorce proceeding and that proceeding resulted in an initial custody determination under the U.C.C.J.E.A. Language in *Turley* is thus modified by statute. We . agree that the request for custody filed as part of the guardianship proceeding should be construed as a request to modify the divorce decree.[13] We also agree that the Kansas proceeding should thus be characterized as a modification proceeding attempting to modify an initial Oklahoma custody determination made pursuant to the U.C.C.J.E.A. We thus have simultaneous modification proceedings in two different states after an initial custody determination in one of those states.

¶ 24 The Kansas court applied *Turley v. Turley, supra,* and the U.C.C.J.A. (**not** the U.C.C.J.E.A.), and concluded that no Oklahoma court had jurisdiction of a child custody proceeding when the Kansas proceeding was filed.[14] The Kansas court did not examine

---

**11.** Section 551–202 states that the exclusive and continuing jurisdiction must be consistent with sections 13 and 15 of the Act, and except as provided in § 16. Section 13 of the Act refers to § 551–201 and section 15 refers to § 551–203. 1998 Okla. Sess. Laws 1998 c. 407 §§ 13, 15. Section 551–201 provides for initial child custody jurisdiction, and § 551–203 provides for jurisdiction to modify a custody determination made by a court of another state. Father does not suggest that the divorce jurisdiction failed to satisfy § 551–201. Our conclusion is that the trial court's order modified its earlier divorce custody order and not an order issued by a Kansas court. Thus, the continuing jurisdiction exercised here under § 551–202 is consistent with sections 13 and 15 of the Act. Section 16 refers to § 551–204 and provides for temporary emergency jurisdiction. 1998 Okla. Sess. Laws 1998 c. 407 §§ 16. The temporary custody orders issued by the Oklahoma court were pursuant to the continuing jurisdiction of that court. Provisions of § 16 relevant to a court exercising emergency jurisdiction when a different court is also exercising custody jurisdiction pursuant to the Act are not relevant to this controversy.

**12.** The U.C.C.J.E.A., 43 O.S.Supp.1998 § 551–102(11), defines "modification" as:

11. "Modification" means a child custody determination that changes, replaces, supersedes,

or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination;

**13.** Custodial rights may be granted in a divorce proceeding to a party other than one of the parents. *McDonald v. Wrigley,* 1994 OK 25, 870 P.2d 777. Whether an order granting custody to a third party in a divorce proceeding would continue in force after the death of one of the parties to the divorce is a question not before us at this time, and our opinion herein is not a determination of that issue. Our opinion today does not address the legal relationships involving psychological parents, surrogate parents, or foster parents and the children they parent.

**14.** We note that Petitioners attach three instruments as an appendix to their "appellate" brief and they *appear* to be orders in the Kansas proceeding. This procedure is incorrect for either an appeal or an original proceeding. Generally, facts are presented by an appellate record certified by the Clerk of the District Court, and facts are not presented to an appellate court by instruments attached as an appendix to an appellate brief. *See Chamberlin v. Chamberlin,* 1986 OK 30, ¶ 4, 720 P.2d 721, 723; 12 O.S.Supp.1999 Ch. 15, App. 1, Okla.Sup.Ct.R. 1.11(i). Our rules provide a method for correcting an appellate

Oklahoma's U.C.C.J.E.A. to determine if Oklahoma had made an initial custody determination or was then exercising jurisdiction as an U.C.C.J.E.A. modification proceeding. In the Oklahoma proceeding the Kansas relatives stated that the U.C.C.J.E.A. did apply, but for the sole purpose of negating Oklahoma jurisdiction because of the Kansas custody proceeding filed prior to the Oklahoma guardianship. However, they make no argument here that the Kansas court exercise of custody jurisdiction satisfies the U.C.C.J.E.A. so as to make the Kansas court proceeding sufficient to divest or negate the continuing jurisdiction of the Oklahoma court. Although we would ordinarily deem this argument to be abandoned in this original jurisdiction proceeding,[15] whether the Kansas court had jurisdiction in substantial conformity with the Act determines whether the simultaneous Oklahoma court proceeding was proper, and we now address that first impression jurisdictional issue

¶ 25 Simultaneous custody proceedings, except for temporary emergency jurisdiction proceedings, are prevented by requiring a court exercising jurisdiction to first determine if a custody proceeding has been commenced in another state having jurisdiction substantially in conformity with the Act. 43 O.S.Supp.1998 § 551–206(A).[16] In other words, "at the time of the commencement of the proceeding", here the Oklahoma modification proceeding, was a different court having jurisdiction substantially in conformity with the Act proceeding with a custody determination of the child?

¶ 26 First, the Kansas court explained Kansas law as holding that the State that issued the initial custody decree, here the Oklahoma divorce, has "continuing exclusive jurisdiction".

> 32. *In the Matter of the Marriage of Mosier,* 251 Kan. 490, 836 P.2d 1158 (1992) the Supreme Court of Kansas stated that "under the Uniform Child Custody Jurisdiction Act and its state counterpart, [the] state that issued the initial custody decree generally has continuing exclusive jurisdiction. K.S.A. 38–1303, 38–1314(a), (a)(1); Uniform Child Custody Jurisdiction Act, §§ 3, 14(a)."

Memo. Decision, Conclusion of Law No. 32, Dist. Crt. Norton Cnty., Kan.

The Kansas court then characterized the dispute as between courts attempting to exercise *initial* custody with Oklahoma as the home state and Kansas as the state where the child had connections.

> 39. Here, as in the *Donaldson [Guardianship of Donaldson,* 178 Cal.App.3d 477, 223 Cal.Rptr. 707 (1986) ] case, we have two state courts, both seeking to exercise initial jurisdiction in substantial conformity with the UCCJA. Oklahoma under the "home state" section (K.S.A.38–1303(a)(1)) and Kansas under the "significant connection" section (K.S.A.38–1303(a)(2)).

Memo. Decision, Findings No. 32, Dist. Crt. Norton Cnty., Kan., (citation added).

The Kansas Court recognized that courts possess continuing jurisdiction after the initial decree, but characterized the Kansas proceeding as an exercise of initial custody

record. Okla.Sup.Ct.R. 1.32. Our rules provide that facts in an original jurisdiction proceeding are presented to the Court by a separate bound appendix. Okla.Sup.Ct.R. 1.191(d). A fact not appearing in an appellate record may nonetheless be considered when presented to the court by an admission in a brief. *See, e.g., Stork v. Stork,* 1995 OK 61, n. 10, 898 P.2d 732, 737. Similarly, in an original proceeding the court may rely upon a fact admitted in briefs. *Board of Education of Ind. School Dist. No. 48, Hughes County v. Rives,* 1974 OK 153, 531 P.2d 335, 336. The maternal relatives admit in their brief that the instruments are orders in the Kansas proceeding. We accept the record as supplemented by these instruments.

15. Arguments raised in a trial court and not on appeal are deemed abandoned. *Gilmore v. Eno-*

gex, *Inc.,* 1994 OK 76, n. 2, 878 P.2d 360, 362; *Herring v. State, ex rel. Oklahoma Tax Commission,* 1995 OK 28, n. 1, 894 P.2d 1074, 1076.

16. 43 O.S.Supp.1998 § 551–206(A) provides:

Except as otherwise provided in Section 16 of this act, a court of this state may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 19 of this act.

jurisdiction, instead of what it really is, an exercise of modification jurisdiction to modify an Oklahoma initial custody order.

¶ 27 The Kansas court did not attempt to exercise modification jurisdiction, and more specifically, did not attempt to exercise modification jurisdiction in substantial conformity with § 203 of the Uniform Act codified at 43 O.S.Supp.1998 § 551–203.[17] Section 203 states that an Oklahoma court may not modify a child custody determination of another state unless the Oklahoma court has jurisdiction to make an initial custody determination in § 551–201(A)(1) & (2),[18] *and* the court of the other state determines it no longer has exclusive continuing jurisdiction *or* that a court of Oklahoma would be a more convenient forum under § 551–207, or an Oklahoma court determines that the child, child's parents, and any person acting as parent do not presently reside in the other state. 43 O.S.Supp.1998 § 551–203.

¶ 28 The Kansas court determined that Oklahoma was the home state, and thus for a

modification determination that court needed to determine if Oklahoma had "declined to exercise jurisdiction on the ground" that a Kansas court was a more convenient forum. The Oklahoma court had not declined to exercise jurisdiction. The Kansas court did not have "jurisdiction substantially in conformity with this act" and the Oklahoma court was correct in proceeding with its simultaneous modification proceeding.

¶ 29 Father and Kansas relatives argue that there is no need for an Oklahoma guardianship because a Kansas proceeding is pending. Of course, the opposite may be said; there is no need for a Kansas proceeding with one pending in Oklahoma. The issue here is whether the Oklahoma court possessed child custody jurisdiction prior to, and at the time of, the Kansas court proceeding. In sum, because of our conclusions that the District Court of Custer County continued to have jurisdiction for the purpose of child custody determinations and the District Court stated that it was proceeding on that

---

**17.** 43 O.S.Supp.1998 § 551–203:

Jurisdiction to modify determination:
JURISDICTION TO MODIFY DETERMINATION
Except as otherwise provided in Section 16 of this act, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under paragraph 1 or 2 of subsection A of Section 13 of this act and:
1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 14 of this act or that a court of this state would be a more convenient forum under Section 19 of this act; or
2. A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.
We note that since the Kansas proceeding occurred that State has adopted the U.C.C.J.E.A. Its statute for modifying custody effective July 1, 2000, K.S.A. 38–1350, states:
**38–1350. Jurisdiction to modify determination.** (UCCJEA 203). Except as otherwise provided in K.S.A. 38–1351 and amendments thereto, a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subsection (a)(1) or (2) of K.S.A. 38–1348 and amendments thereto, and:
(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under K.S.A. 38–1349 and amendments thereto,

or a court of this state would be a more convenient forum under K.S.A. 38–1354 and amendments thereto; or
(2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

**18.** Initial custody jurisdiction pursuant to § 551–201(A)(1) & (2) is as follows:

A. Except as otherwise provided in Section 16 of this act, a court of this state has jurisdiction to make an initial child custody determination only if:
1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state, but a parent or person acting as a parent continues to live in this state;
2. A court of another state does not have jurisdiction under paragraph 1 of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 19 or 20 of this act, and:
a. the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence, and
b. substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

basis, and that the Kansas modification proceeding did not involve a court having jurisdiction substantially in conformity with the U.C.C.J.E.A., we need not address further the argument on the lack of needing an Oklahoma proceeding because of a then pending Kansas proceeding.

¶ 30 Having determined that Father obtained legal custody upon the death of the custodial parent, and that the District Court of Custer County was possessed of continuing jurisdiction in the divorce proceeding to modify custody of the child, Father argues here that he could nevertheless transport the child out of state for the purpose of relinquishing custody to his relatives. Father relies upon the general proposition that he was the custodial parent upon the death of Mother. *Turley v. Turley, supra.* Authority cited by Father on the issue of a non-custodial parent obtaining custodial rights upon the death of the custodial parent does not address substantive and procedural rights involved in parental relinquishment of custody. Father does not rely upon or cite any Oklahoma or Kansas statute relating to a parent relinquishing custody, or authority to relinquish parental rights, or transferring custody of his child in a Kansas court when the child is subject to the continuing jurisdiction of an Oklahoma child custody proceeding.

¶ 31 In an appeal we need not consider assignments of error unsupported by convincing argument or authority, unless it is apparent without further research that they are well taken. *Beets v. Metropolitan Life Insurance Company,* 1999 OK 15, ¶ 9, 995 P.2d 1071, 1074. In this original jurisdiction proceeding we see no reason why we should consider a challenge to a District Court's authority when the challenge is unsupported by convincing argument or authority, unless it is apparent without further research that the challenge is proper. The correctness of Father's challenge based upon a right to relinquish custody is not facially apparent, and we thus decline to address it further.

¶ 32 The Oklahoma District Court order stated that Father, "the Defendant, S____. W____., by reason of said uncontroverted testimony, is not a fit and proper person to have custody or control of the minor child. . . . " Father claims that the evidence was insufficient to show that he is unfit. Generally, prohibition is not used to review the sufficiency of the evidence underlying a District Court adjudication. *Klutts v. Blackbird,* 1946 OK 266, 174 P.2d 361, 362.[19] Nor is it used to re-adjudicate a judge's determination of facts. *Vanguard Underwriters Ins. Co. v. Amick,* 1973 OK 86, 512 P.2d 807, 809. A trial judge is able to judge the credibility of the witnesses and the weight of their testimony better than this Court on appeal from a trial court's judgment. *K.R. v. B.M.H.,* 1999 OK 40, ¶ 18, 982 P.2d 521, 524. Similarly, a trial judge is able to judge the credibility of the witnesses and the weight of their testimony better than this Court in an extraordinary proceeding challenging a temporary custody order.

¶ 33 A claim that the evidence is insufficient or the trial court ruling contrary to the weight of the evidence is usually reviewed on an appeal from the divorce decree or final order. *See, e.g., Kahre v. Kahre,* 1995 OK 133, ¶ 19, 916 P.2d 1355, 1360; *Johnson v. Johnson,* 1983 OK 117, n. 19, 674 P.2d 539, 546; *Brown v. Fraser,* 1970 OK 50, ¶ 19, 467 P.2d 464, 469. Nothing before us suggests that the remedy by appeal is inadequate to review Father's claims. Prohibition cannot be had when the ordinary and usual remedies are available, and the writ cannot take the place of, or be substituted for, an appeal. *Watchorn Basin Association v. Oklahoma Gas & Electric Co.,* 1974 OK 27, 525 P.2d 1357, 1359. In this extraordinary writ proceeding we decline to review the sufficiency of the evidence used in adjudicating Father's fitness for temporary custody. We decline to assume original jurisdiction on this claim.

¶ 34 We recast the petition in error to an application to assume original jurisdiction

---

19. Exceptions to this rule do exist, and this Court does, on specific types of claims, review in an original jurisdiction proceeding the sufficiency of the evidence before an inferior tribunal. One example of our review of evidence occurs in election contests. *Hembree v. City of Stilwell,* 1979 OK 109, 597 P.2d 1218, 1220. None of the exceptions are applicable to this controversy.


and petition for writ of prohibition. We assume original jurisdiction on Petitioners' claims challenging the jurisdiction and authority of the District Court. We decline to issue the writ because we conclude that the District Court made an initial child custody determination at the time of the divorce, and although the subsequent Oklahoma modification proceeding was commenced after the simultaneous Kansas modification proceeding, the Kansas court was not attempting to exercise modification jurisdiction and that court did not have jurisdiction in substantial conformity with the U.C.C.J.E.A. We decline to assume original jurisdiction on the non-jurisdictional challenges to the District Court's order of temporary custody because they are beyond the ordinary scope of prohibition, and an adequate remedy exists for their review.

¶ 35 HARGRAVE, C.J., HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 36 OPALA, J., concurs in part, dissents in part.

¶ 37 WATT, V.C.J., dissents.