OSCN Found Document:IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA TURNPIKE AUTHORITY

 

 
 

 
 IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA TURNPIKE AUTHORITY
2018 OK 88
Case Number: 117233
Decided: 11/14/2018
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 88, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA TURNPIKE AUTHORITY FOR APPROVAL OF NOT TO EXCEED $125,000,000 GILCREASE EXPRESSWAY TOLL REVENUE BONDS, SERIES 2018 (GILCREASE EXPRESSWAY WEST PROJECT: TIFIA 2018)

ORIGINAL PROCEEDING TO APPROVE REVENUE BONDS

Â¶0 The Oklahoma Turnpike Authority (Authority) seeks to issue revenue bonds for use in the construction of the Gilcrease Expressway Turnpike Project in Tulsa, Oklahoma. Pursuant to 69 O.S. 2011 Â§1718, the Authority filed an application in this Court seeking approval of the proposed bonds. No objections were filed. We accept original jurisdiction to determine the bonds' validity.

ORIGINAL JURISDICTION ASSUMED; 
BOND PROPOSAL APPROVED.

Jered T. Davidson, Oklahoma City, Oklahoma, for Oklahoma Turnpike Authority.

KAUGER, J:

Â¶1 The cause before us is an original proceeding brought pursuant to the provisions of 69 O.S. 2011 Â§1718,[1] which authorizes the Oklahoma Turnpike Authority (Authority) to file an application with this Court seeking approval of bonds to be issued for the construction and operation of turnpike projects. With no Protestants filing objections, we approve the bonds.

BACKGROUND

Â¶2 Since the 1950's, this Court has approved several bonds requested by the Authority. In 2017, the Oklahoma Legislature passed the Oklahoma Local Public and Private Facilities and Infrastructure Act (the Act), 74 O.S. Supp. 2017 Â§Â§5151 et. seq.[2] The purpose of the Act is to facilitate public-private partnerships to improve public services.[3]

Â¶3 Even though the Authority is exempted from the Act, the Act does provide that the Authority may utilize the general provisions and processes of the Act to develop public-private partnership agreements.[4] The purpose the agreements is to facilitate the construction and operation of various turnpike projects throughout the state. One such project is the proposal at issue here. The Gilcrease Expressway, the project presented here, is part of an original more than 50 year-old master plan for Tulsa, Oklahoma. The project will be four lanes, approximately 5 miles in length, serving west and north Tulsa. It will connect Interstate 44 and U.S. Highway 412, operating as an all-electronic toll collection system.

Â¶4 Financing for the project will come from the issuance of revenue bonds or a TIFIA loan, secured by and payable from revenues generated by the project. Additional financial commitments are also made by the Authority, the Oklahoma Department of Transportation, and the City of Tulsa utilizing a combination of: 1) long term debt, payable from project revenues in the form of a loan from the United States Department of Transportation (USDOT) under the Transportation Infrastructure Finance and Innovation Act (TIFIA)[5]; 2) $71,123,068 of bond proceeds from the "Grant Anticipation Notes (GARVEEs) issued and payable by ODOT; and 3) a contribution from the Authority's general fund. This project is described as a component of the "Driving Forward" program announced by the Governor in 2015. It is generally designed to expand and modernize the Authority's Turnpike Projects and improve safety throughout the state.[6]

DISCUSSION/CONCLUSION

Â¶5 There are no Protestants to this cause. Consequently, no one presents any legal authority showing that this project is a violation of the Oklahoma Constitution or any statutes. Nor does it appear that the Authority exceeded its authority as authorized by law, or that the Bonds appear to facially violate the law. Pursuant to In the Matter of Application of the Oklahoma Turnpike Authority, 2016 OK 124, Â¶15, 389 P.3d 31 we need not engage in further research.[7] The applicant explains that the bond financing procurement in this proposal cannot create an unlawful partnership interest in contravention to the Okla. Const. art. 10, Â§15[8] because at no time will the Authority enter into a joint venture or acquire a partnership or other ownership interest in a private entity.

Â¶6 Rather, the Authority will oversee construction and provide inspection. Upon completion it will be the owner of the project, and solely responsible for operating and maintaining the new turnpike. It will also establish the applicable rates and charges for use by the public.

CONCLUSION

Â¶7 The proposed bond issue was properly authorized as an essential governmental function.[9] Valid notice of this application was given.[10] No Protestants have come forward, therefore, there is no legally or factually supportable reasons to disapprove the application. Accordingly, the Authority's application is granted. Rehearing, if any, shall follow Okla. Sup. Ct. Rule 1.13.[11]

ORIGINAL JURISDICTION ASSUMED;
BOND PROPOSAL APPROVED.

COMBS, C.J., GURICH, V.C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, and DARBY, JJ., concur.

COLBERT and WYRICK, JJ., dissent

WYRICK, J., with whom COLBERT, J., joins, dissenting:

The Court lacks jurisdiction to render this advisory opinion.

FOOTNOTES

[1] Title 69 O.S. 2011 Â§1718 provides:

The Authority is authorized in its discretion to file an application with the Supreme Court of Oklahoma for the approval of any bonds to be issued hereunder, and exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each such application. It shall be the duty of the Court to give such applications precedence over the other business of the Court and to consider and pass upon the applications and any protests which may be filed thereto as speedily as possible. Notice of the hearing on each application shall be given by a notice published in a newspaper of general circulation in the state that on a day named the Authority will ask the Court to hear its application and approve the bonds. Such notice shall inform all persons interested that they may file protests against the issuance of the bonds and be present at the hearing and contest the legality thereof. Such notice shall be published one time not less than ten (10) days prior to the date named for the hearing and the hearing may be adjourned from time to time in the discretion of the Court. If the Court shall be satisfied that the bonds have been properly authorized in accordance with this article and that when issued, they will constitute valid obligations in accordance with their terms, the Court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed. The decision of the Court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, its officers and agents, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in the State of Oklahoma.

[2] Title 74 O.S. Supp. 2017 Â§Â§5151 et seq. Section 5151 provides:

This act shall be known and may be cited as the "Oklahoma Local Public and Private Facilities and Infrastructure Act".

[3] Title 74 O.S. Supp. 2017 Â§5154.1 provides:

Authority and Purpose of this Act

A responsible governmental entity may take any action and execute any Public-Private Partnership contract, authorized under this act, for the provision of a public purpose in order to more efficiently and effectively provide public services, including by generating additional resources in support of the public project.

[4] Title 74 O.S. Supp. 2017 Â§5152.1 provides in pertinent part:

. . .B. The Oklahoma Department of Transportation and the Oklahoma Turnpike Authority shall be exempt from this act. However, the Oklahoma Department of Transportation and the Oklahoma Turnpike Authority may utilize the general provisions and process described herein to develop a public-private partnership contract for a transportation improvement in consultation with the Director of the Office of Management and Enterprise Services (OMES) and subject to the approval of the Oklahoma Transportation Commission or the Oklahoma Turnpike Authority Board as applicable

[5] 23 U.S. C. Â§Â§601-609.

[6] See, In the Matter of Application of the Oklahoma Turnpike Authority, 2016 OK 124, Â¶6, 389 P.3d 318.

[7] In the Matter of Application of the Oklahoma Turnpike Authority, 2016 OK 124, Â¶15, 389 P.3d 318 [We need not consider propositions unsupported by convincing argument or authority in an original action unless it is apparent without further research that they are well taken. S.W. v. Duincan, 2001 OK 39, Â¶31, 24 P.3d 846.].

[8] The Okla. Const. art. 10, Â§15 provides:

15. Pledge or loan of credit - Donation - Exceptions.

A. Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.

B. Pursuant to authority of and subject to requirements of law and according to professional norms established nationally in similar activities, the Oklahoma Center for the Advancement of Science and Technology or its successor may be authorized to use public funds not exceeding one percent (1%) of total state appropriations for the current fiscal year to promote economic development through grants or loans to individuals, companies, corporations or associations. Pursuant to authority of and subject to requirements of law and according to professional norms established nationally in similar activities, the Oklahoma Center for the Advancement of Science and Technology or its successor may be authorized to use public funds in order to promote economic development by purchase or ownership of stock or to make other investments in private enterprises and to receive income from such investments which are involved with research or patents from projects involving Oklahoma colleges or universities. The Oklahoma Center for the Advancement of Science and Technology or its successor may only use public funds for the purposes authorized in this subsection if a statute specifically authorizing such use is approved by an affirmative vote of at least two-thirds ( 2/3 ) of the members elected to the Senate and to the House of Representatives upon final passage of such measure in each of the respective houses and with the approval of the Governor.

C. The Legislature shall only authorize use of public funds by the Oklahoma Center for the Advancement of Science and Technology or its successor as permitted by this section for promotion of economic development by creation of new employment, enhancement of existing employment or by the addition of economic value to goods, services or resources within the State authorized by subsection B herein.

D. The Legislature shall establish procedures to review and evaluate the extent to which the purposes of any statute authorizing use of public funds by the Oklahoma Center for the Advancement of Science and Technology are achieved.

E. Bonds issued by the board of education of any school district or public institutions of higher education may be guaranteed by the corpus of the permanent school fund, provided:

1. As to bonds issued by the board of education such bonds must be approved by election of the school district upon the question of issuing such bonds;

2. As to bonds issued by an institution within The Oklahoma State System of Higher Education such bonds are issued in accordance with all applicable provisions of law; and

3. Provisions shall be made by the Legislature to guarantee prompt reimbursement to the corpus of the permanent school fund for any payment from the fund on behalf of a school district or on behalf of an institution within The Oklahoma State System of Higher Education. The reimbursement shall include a reasonable rate of interest. The provisions of this paragraph regarding use of the permanent school fund for guarantee of bonds issued by an institution within The Oklahoma State System of Higher Education shall not be self- executing and the Legislature shall provide by law the procedure pursuant to which such obligations may be guaranteed and the procedures for repayments, if any, required to be made to the permanent school fund.

F. Subject to requirements imposed by law, the governing boards of institutions within The Oklahoma State System of Higher Education and employees of those institutions may have an ownership interest in a technology, whether or not the technology is protected pursuant to federal or state law governing intellectual property, and may have an ownership interest in a business enterprise or private business entity, if the ownership interest is acquired as a result of research or development of a technology involving the authorized use of facilities, equipment, or services of such institutions.

[9] The Enabling Act, 69 O.S. 2011 Â§1701 establishes the Authority to construct, maintain, repair, and operate turnpike projects and to issue turnpike revenue bonds payable solely from revenues to pay the cost of such projects. the term "project" includes highways and related infrastructure necessary for turnpike operation. The Authority is an instrumentality of the state and its purpose of construction, operating and maintaining turnpikes is an essential governmental function.

[10] Pursuant to 69 O.S. 2011 Â§1718, see note 1, supra, on July 25, 2018, this Court issued an order setting the dates for protests to be filed and oral presentation on the matter in accordance with the statute. The Authority on August 14, 2018, filed an "Affidavit of Proof of Publication" attaching proof of compliance with the above notice requirements. No protests against the issuance of the bonds were filed nor did any interested persons or Protestants appear at the hearing before the referee.

[11] Title 20 O.S. 2011 Â§14.1 provides that this Court shall fix the time for rehearing. It states:

Any department, institution, board, bureau, division, commission, agency, trusteeship, or authority of state government authorized to issue bonds, notes, or other evidences of indebtedness may, upon advice of bond counsel or upon governing board approval, file an application with the Supreme Court of Oklahoma for the approval of any obligations to be issued by it. Exclusive original jurisdiction shall be conferred upon the Supreme Court to hear and determine each such application pursuant to rules and procedures designated by the Court. The Court may give such applications precedence over the other business of the Court and to consider and pass upon the applications and any protests which may be filed against the application as expeditiously as possible.

Notice of the hearing on each application shall be given by a notice in a newspaper of general circulation in the state that on a day named, the applicant will ask the Court to hear its application and approve the obligations. Notice shall inform all persons interested that they may file protests against the issuance of the obligations and be present at the hearing and contest its legality. The notice shall be published one time not less than ten (10) days prior to the date named for the hearing and the hearing may be adjourned from time to time in the discretion of the Court.

If the Court is satisfied that the obligations have been properly authorized in accordance with the law and that when issued, they will constitute valid obligations in accordance with their terms, the Court shall render its written opinion approving the obligations and shall fix the time within which a petition for rehearing may be filed. The decision of the Court shall be a judicial determination of the validity of the obligations, shall be conclusive as to the applicant, its officers and agents, and thereafter the obligations so approved and the revenues pledged to their payment shall be incontestable in any court in this state.

Rule 1.13 of the Okla. Sup. Ct. Rules. 12 O.S. 2011 App. 1, provides in pertinent part:

(a) Petition.

Applications for a rehearing and a brief in support thereof, unless otherwise ordered by the Court, shall be made by petition to the Court, signed by counsel, and filed with the Clerk within twenty (20) days from the date on which the opinion in the cause is filed. The mailbox rule, extended to various papers by the terms of Rule 1.4 (c) and 1.4(e), applies to rehearing petitions to the Supreme Court. No oral argument on a petition for rehearing shall be allowed except upon order of the Court. No petition for rehearing shall be filed or considered without proof of service. . . .