OSCN Found Document:IN THE MATTER OF APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY

 

 
 

 
 IN THE MATTER OF APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY
2022 OK 48
Case Number: 120275
Decided: 05/24/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 48, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY FOR APPROVAL OF NOT TO EXCEED $725,000,000 RATEPAYER-BACKED BONDS (PUBLIC SERVICE COMPANY OF OKLAHOMA), SERIES 2022 (FEDERALLY TAXABLE)

ORIGINAL ACTION TO APPROVE RATEPAYER-BACKED BONDS

Â¶0 The Oklahoma Development Finance Authority requests that this Court assume original jurisdiction and approve the issuance of ratepayer-backed bonds pursuant to the February 2021 Regulated Utility Consumer Protection Act, 74 O.S.2021, ch. 110A-1, Â§Â§ 9070-9081. The Oklahoma Development Finance Authority seeks to issue bonds to cover the debt incurred by Public Service Company of Oklahoma from unprecedented fuel costs during the February 2021 winter weather event. Public Service Company of Oklahoma's ratepayers would then fund the bond payments through a monthly charge. The ratepayer-backed bonds would allow customers to pay their utility bills at a lower amount over a longer period of time. No protestants challenged the proposed bonds. We assume original jurisdiction and hold the ratepayer-backed bonds were properly authorized under the Act and are constitutional.

ORIGINAL JURISDICTION ASSUMED;
PROPOSED BOND ISSUE APPROVED.

Jered T. Davidson, The Public Finance Law Group, PLLC, Oklahoma City Oklahoma, for The Oklahoma Development Finance Authority.

PER CURIAM:

Â¶1 The matter before us is an original proceeding brought pursuant to the February 2021 Regulated Utility Consumer Protection Act (Act), specifically 74 O.S.2021, ch. 110A-1, Â§ 9079, https://govt.westlaw.com/okjc (in ch. 110A-1, follow hyperlink titled, "February 2021 Regulated Utility Consumer Protection Act"), which authorized the Oklahoma Development Finance Authority (ODFA) to file an application with this Court seeking approval of ratepayer-backed bonds to finance the recovery of the fuel costs incurred by Public Service Company of Oklahoma (PSO) during the February 2021 weather event. We assume original jurisdiction and approve the bonds.

BACKGROUND AND PROCEDURAL HISTORY

Â¶2 In February 2021, the State of Oklahoma endured record cold temperatures. The severe cold weather resulted in a shortage of the natural gas supply due to incredibly high demand and the cold weather preventing the gas's extraction and transportation, which, in turn, caused extraordinary natural gas costs for regulated utilities operating in Oklahoma. The cost of natural gas for the Oklahoma utilities during the two weeks of extreme cold exceeded their entire fuel acquisition cost in 2020.

Â¶3 As a result, the Oklahoma Legislature enacted the Act, 74 O.S.2021, ch. 110A-1, Â§Â§ 9070-9081, to provide financing options to lower the economic impact on the utility customers. Most Oklahomans could not afford a one-time, cost recovery payment imposed by the utilities or a monthly payment under the utilities' traditional financing method. The Legislature provided a new mechanism to spread the fuel cost recovery over a longer period at a lower interest rate to minimize the financial impact on utility customers. The Act authorized the Oklahoma Corporation Commission (Commission) to approve the utilities' recovery of prudently incurred costs through securitization, which is a financial tool creating a property right to revenues collected by regulated utilities from customers under an irrevocable and nonbypassable mechanism. 74 O.S.2021, ch. 110A-1, Â§ 9072(10), https://govt.westlaw.com/okjc. The property right is then sold and used as security for the repayment of the ratepayer-backed bonds. Id.[1]

Â 

Â¶4 On April 28, 2021, PSO applied with the Commission to determine that the $675,200,000 in fuel costs PSO incurred during the February 2021 winter storm were prudent. PSO, the Commission's Public Utility Division, the Oklahoma Attorney General's office, and other large stakeholders (including the American Association of Retired Persons (AARP), Walmart, and Oklahoma Industrial Energy Consumers) entered into settlement negotiations regarding PSO's application. All the parties, except AARP, entered into a Settlement Agreement that found PSO prudently incurred costs during the winter storm amounting to $675,200,000. With securitization and financing costs, the agreement approved PSO to recover $688,000,000.

Â 

Â¶5 On January 5, 2022, after taking public comment, an Administrative Law Judge (ALJ) for the Commission held a hearing where the parties presented evidence either in support or against the Settlement Agreement. All parties, except for AARP, acknowledged or agreed that utilizing the securitization method provided the most favorable savings to the ratepayers. The ALJ then issued a report approving the Settlement Agreement.

Â¶6 On February 10, 2022, the Commission held a hearing regarding the ALJ's report and issued the Final Financing Order. The Order approved $675,200,000 in fuel costs and approximately $12,800,000 in financing costs and interest, totaling $688,000,000 to be collected through securitization of that debt.[2] The Order specified that ODFA would purchase the debt through issuing bonds backed by a monthly charge (WSC charge) assessed to each PSO ratepayer. The securities were to be amortized for a longer period of time (20 years) to lower the ratepayer collection cost. The monthly WSC charge was estimated to be $4.06 per month for an average residential customer under the securitization method, compared to $6.45 per month under the traditional method.[3] PSO presented testimony that utilizing the securitization method instead of using its traditional financing method would save approximately $438 million. No party appealed the Final Financing Order.

Â¶7 ODFA filed an application with this Court to assume original jurisdiction for approval of the ratepayer-backed bonds, per the provisions of 74 O.S.2021, ch. 110A-1, Â§ 9079, https://govt.westlaw.com/okjc. No protestants filed in response to the application.

Â¶8 The Court has long recognized that its obligation in reviewing bonds is to determine whether the bonds facially violate the law and to examine the legal authority presented by protestants. In re Application of Okla. Turnpike Auth., 2018 OK 88, Â¶ 5, 431 P.3d 59, 60-61. Without protestants, the Court only examines whether the bonds facially violate the law. Id. The questions before this Court are (1) whether the ratepayer-backed bonds were properly authorized under the Act and (2) whether the bonds are constitutional.

DISCUSSION

Â¶9 The Legislature conferred upon the Court "exclusive original jurisdiction" to hear and determine ODFA's application. 74 O.S.2021, ch. 110A-1, Â§ 9079, https://govt.westlaw.com/okjc. We recently answered similar legal questions in In the Matter of the Application of the Oklahoma Development Finance Authority for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Oklahoma Gas and Electric Company), Series 2022 (Federally Taxable), which involved the use of securitization of bonds to recoup Oklahoma Gas and Electric Company's costs for the 2021 February weather event. We held that the ratepayer-backed bonds for Oklahoma Gas and Electric Company were properly authorized and constitutional. 2022 OK 41, Â¶Â¶ 13, 16. In any case in which it appears that a prior controlling appellate decision is dispositive of the appeal, the court may summarily affirm or reverse. See Okla. Sup. Ct. Rule 1.201.

Â¶10 For the reasons stated in our prior decision, the ratepayer-backed bonds for PSO conform to the Act as PSO's Final Financing Order also sets out the parameters of the bonds' issuance, terms, conditions, requirements, and interest. 74 O.S.2021, ch. 110A-1, Â§ 9074(A), https://govt.westlaw.com/okjc. The process set out in the Act was followed, and the bonds appear facially valid.

Â¶11 These ratepayer-backed bonds are also constitutional. See In re Application of Okla. Dev. Fin. Auth. for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Okla. Gas & Elec. Co.), Series 2022 (Federally Taxable), 2022 OK 41, Â¶Â¶ 14-16. The proposed bonds involve traditional, self-liquidating bonds historically upheld by this Court's jurisprudence as constitutional; stare decisis demands their approval. In re Application of Okla. Capitol Improvement Auth., 1998 OK 25, Â¶Â¶ 45-46, 958 P.2d 759, 773.

Â¶12 We emphasize that the use of securitization of bonds to recoup the costs for the 2021 February weather event was a legislative fiscal policy decision. This Court is not to question whether the Act is "wise or unwise, whether it is based on sound economic theory or whether it is the best means to achieve the desired result." In re Application of Okla. Capitol Improvement, 1998 OK 25, Â¶ 9, 958 P.2d at 763. As noted in our prior opinion, "this Court may not--based on its perception of how the State should conduct its business dealings--direct legislative decision-making." In re Application of Okla. Dev. Fin. Auth. for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Okla. Gas & Elec. Co.), Series 2022 (Federally Taxable), 2022 OK 41, Â¶ 13.

CONCLUSION

Â¶13 The February 2021 Regulated Utility Consumer Protection Act provides that if the Court is satisfied that the obligations have been properly authorized by the Act and the Oklahoma Constitution and the bonds constitute valid obligations, the Court shall render its written opinion approving the ratepayer-backed bonds. 74 O.S.2021, ch. 110A-1, Â§ 9079, https://govt.westlaw.com/okjc. Accordingly, we approve the ratepayer-backed bonds. Any petition for rehearing regarding this matter shall be filed within twenty (20) days of the date of this opinion.

ORIGINAL JURISDICTION ASSUMED;
PROPOSED BOND ISSUE APPROVED.

Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs, and Gurich, J.J., concur.

Rowe, J. (by separate writing), concurs in result.

Kuehn, J., recused.

FOOTNOTES

[1] For a thorough explanation of the Act and the securitization method, see In the Matter of the Application of the Oklahoma Development Finance Authority for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Oklahoma Gas and Electric Company), Series 2022 (Federally Taxable), 2022 OK 41, Â¶Â¶ 3-4, 10-11.

[2] ODFA is seeking an amount not to exceed $725,000,000. ODFA represents that the total amount is still not yet determined as final carrying costs cannot be determined until the securitization process through the sale of the bonds is final. Per the Act, approval of the bonds by this Court is required prior to the sale of the bonds.

[3] Public Service Company of Oklahoma (Estimate Comparisons)

 
 
 
 Description of Issue
 
 
 FCA* (w/o 
 Regulated Asset**)
 
 
 FCA 
 RECOVERY 
 TARIFF
 
 
 TRADITIONAL
 
 
 SECURITIZATION
 
 
 
 
 Amortization Period
 
 
 1 month
 
 
 1 year
 
 
 20 years
 
 
 20 years
 
 
 
 
 Interest Rate
 
 
 0.12%
 
 
 0.12%
 
 
 8.55%
 
 
 2.37%
 
 
 
 
 Principal Amount Owed
 
 
 $675,247,096
 
 
 $675,247,096
 
 
 $675,247,096
 
 
 $688,000,000
 
 
 
 
 Interest accrued
 
 
 $67,525
 
 
 $438,911
 
 
 $724,001,911
 
 
 $181,093,552
 
 
 
 
 Total Amount (Principal + Interest)
 
 
 $675,314,621
 
 
 $675,686,007
 
 
 $1,399,249,007
 
 
 $869,093,552
 
 
 
 
 Monthly Impact 
 
 
 $476.53
 
 
 $39.73
 
 
 $6.45
 
 
 $4.06
 
 
 

*FCA = Fuel Cost Adjustment
** Regulated Asset = A holding place from storm costs, which are carried on the utility's books.

See Oklahoma Corporation Commission, News, Commission Approves Order on PSO's February 2021 Storm Costs, February 20, 2022, available at https://oklahoma.gov/occ/news/news-feed/2022/commission-approves-order-on-pso-february-2021-stormcosts.html#:~:text=The%20Oklahoma%20Corporation%20Commission%20(OCC,the%20February%202021%20winter%20storm.

Â 

Â 

ROWE, J., concurring in result:

Â¶1 I concur in the Court's judgment insofar as I do not recognize any clear constitutional or legal infirmities in Petitioner's application. I write separately to address once more a number of concerns I have with the nature of these proceedings.

Â¶2 This is now the third time in a matter of weeks that this Court has been prompted by virtue of legislative enactments to preemptively "approve" the issuance of billions of dollars in government bonds.[1] Between the prior two bond approvals and the three we approve today,[2] we have signed off on $3,270,000,000 in bonded indebtedness to be borne by Oklahomans. For reference, the State's budget for FY 2022 authorized approximately $9,060,000,000 in appropriations.[3]

Â¶3 The law in question here, the February 2021 Regulated Utility Consumer Protection Act, also narrowly circumscribes our authority in approving the bonds.[4] Despite the limited scope of our review, our approval of the bonds in question will permanently foreclose the right of any person or entity to challenge the validity of these bonds in the future, even if a meritorious claim arises.[5] These consequences should not be taken lightly when the effect of our ruling will be to irrevocably saddle many Oklahomans with a significant financial obligation for the next twenty years--and to establish additional precedent for future bond approvals.

Â¶4 The February 2021 Regulated Utility Consumer Protection Act, which established the procedure forming the basis of this matter, was enacted by the Legislature and signed into law by the Governor in February 2021. Despite my misgivings, our statutory mandate under the Act is limited to ruling upon the constitutionality of the policy, not to supplant the policy with our own.

FOOTNOTES

[1] See In re Application of the Okla. Capitol Improvement Auth. For Approval of $200,000,000 State Highways Capital Improvement Notes, 2022 OK 31; In re Application of Okla. Dev. Fin. Auth. For Approval of $800,000,000 Ratepayer-Backed Bonds (Okla. Gas & Elec. Co), 2022 OK 41.

[2] See In re App. of Okla. Dev. Fin. Auth. for Approval of $1,450,000,000 Ratepayer-Backed Bonds (Okla. Natural Gas Co.), No. 120,274 (Okla. Sup. Ct. 2022); In re App. of Okla. Dev. Fin. Auth. for Approval of $95,000,000 Ratepayer-Backed Bonds (Summit Utils. Okla), No. 120,276 (Okla. Sup. Ct. 2022).

[3] See H.B. 2900, 58th Leg, 1st Sess. (Okla. 2021); Governor Stitt Signs FY 2022 State Budget Package into Law, https://oklahoma.gov/governor/newsroom/newsroom/2021/may/governor-stitt-signs-fy-2022-state-budget-package-into-law.html?msclkid=88d451f9c7df11eca4a990d86c0868cc (last modified Aug. 18, 2021).

[4] Title 74, Section 9079 states, in pertinent part:

If the Court shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of the State of Oklahoma, and that when issued they will constitute valid obligations in accordance with their terms, the Court shall render its written opinion approving the ratepayer-backed bonds and shall fix the time within which a petition for rehearing may be filed.

[5] Section 9079 goes on to say:

The decision of the Court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, the state, its officers, agents and instrumentalities, and all other persons, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in this state.

Â 

Â